EUGENE BARZ, Appellant, v. FLEISCHMANN YEAST COMPANY.

In Banc, April 13, 1925.

1. **DELIVERY TRUCK: Bearing Owner's Name: Driver's Negligence: Scope of Employment: Prima-Facie Case.** In attempting to cross a public street plaintiff was struck by a motor delivery truck belonging to and used by defendant yeast company in its business, and sues the company for damages. The driver was a shipping clerk in defendant's employ, his usual duties being to pack yeast cartons. He and defendant's officers denied that it was a part of his duties to make deliveries or to use the truck for any purpose or that he ever had previously used it. A few minutes before twelve o'clock he started for his noonday lunch and as he came out of the shipping room he saw the truck standing close by and assuming that he could drive to a restaurant and return before the regular driver would wish to use it he took the truck and on the way struck plaintiff, who did not see the truck or hear a horn sounded. Emblazoned on the truck was defendant company's name, and it was a business vehicle, used in defendant's business. *Held*, that these facts made a prima-facie case for plaintiff against the defendant company, which placed upon it the burden of proving that the driver was not using the truck in his master's business and within the scope of his employment, and the trial court erred in giving an instruction directing the jury to return a verdict for said defendant.

2. ——: ——: ——: ——: **Driver's Statement: Res Gestae.** After plaintiff was struck by defendant's motor delivery truck, the driver stopped, lifted plaintiff into the truck, and took him to a police station, where he recovered consciousness. The driver there-

upon offered to take him home, but started in the opposite direction, whereupon plaintiff asked him where he was going, to which the driver replied, "I am going to make some deliveries," and this reply was made within thirty minutes to an hour after the injury. It was excluded, on the theory that it was not binding on the defendant company. On cross-examination the driver testified that he was defendant's shipping clerk; that he had never driven the truck before; that he voluntarily took it at the noon hour, when it was not being used by the regular driver, to ride to a restaurant for his lunch, and that he did not remember that plaintiff asked him where he was taking him or that he replied, "I have got a couple orders to deliver for the company, and then I will take you home;" and thereupon plaintiff offered to show, in rebuttal, that he did make said reply, which offer was refused. The principal question in the case is whether the driver of the delivery truck at the time it struck plaintiff was acting within the scope of his employment. The truck was a delivery wagon, belonged to the defendant company by which the driver was employed, was used in its business, and on it was plainly emblazoned its name. The question is whether this statement of the driver was a part of the *res gestae* and as such admissible in evidence to prove that he was engaged in his master's business and had not completed the errand on which he was going at the time he was interrupted in its performance by the accident. On the theory that the statement was explanatory of the business in which the driver was engaged and the purpose for which he was using the truck at the time of the injury, and that it was spoken instinctively and in connection with the causal relation to the injury, the opinion contains quotations from numerous authorities in support of the theory that the statement was admissible as a part of the *res gestae;* but the question is not decided.

Citations to Headnotes: Headnote 1: Master and Servant, 26 Cyc. p. 1573; Motor Vehicles, 28 Cyc. p. 48. Headnote 2: Evidence, 22 C. J. secs. 442, 540.

Appeal from St. Louis City Circuit Court.—*Hon. H. A. Hamilton,* Judge.

REVERSED AND REMANDED.

*Wm. R. Schneider* and *F. J. Hoffmeister* for appellant; *C. P. Berry* of counsel.

(1) The court erred in excluding as to the Fleischmann Yeast Company the plaintiff's offer of proof as

part of his case in chief and in rebuttal, evidence to the effect that while the plaintiff was in the delivery automobile with the defendant Faeth, the latter told the plaintiff within thirty minutes or an hour after he ran over plaintiff with the delivery automobile of the company, that before he could take plaintiff home he had a couple of orders to deliver for the company, and that then he would take him directly home. Harriman v. Stowe, 57 Mo. 96; Par v. Illinois Fire Ins. Co., 178 Mo. App. 155; McDermott v. Ry. Co., 73 Mo. 516. (2) A prima-facie case of the agency of defendant Faeth for the company having been made by showing that the delivery automobile had the name Fleischmann Yeast Company on it, and that Faeth was on the day of the accident, and prior and subsequent thereto, in the employment of the company, the admissions of the agent became admissible to prove his agency, and the court erred in excluding, as to the company, the evidence mentioned in Point 1 and offered as part of the plaintiff's case in chief and in rebuttal. A prima-facie case is established. Guthrie v. Holmes, 272 Mo. 215; O'Malley v. Const. Co., 255 Mo. 386; Gordon v. Bleeck Auto Co., 233 S. W. 265. Admissions of an agent are admissible to prove agency after prima-facie case is made. Peck v. Richey, 66 Mo. 118; Werth v. Ollis, 61 Mo. App. 407; Oil Well Supply Co. v. Metcalf, 174 Mo. App. 560; State ex rel. v. Henderson, 86 Mo. App. 482; Stenson v. Lancaster, 178 Mo. App. 346; Wharton v. Tierney-Toner Co., 217 Pac. 998. (3) The court erred in instructing the jury that "under the law and the evidence your verdict must be for the defendant Fleischmann Yeast Company." Plaintiff, having made a prima-facie case and more against the company, was entitled to have his case submitted to the jury as to the company. Lafferty v. Kansas City Cas. Co., 229 S. W. 750; Geiselman v. Schmidt, 106 Md. 586; Kunst v. Bullock, 59 Wash. 141; Williams v. Ludwig Floral Co., 252 Pa. 140; Edgeworth v. Wood, 58 N. J. L. 463; Schulte v. Holliday, 54 Mich. 73; Seaman v. Koehler, 122 N. Y. 646; Ferris v. Sterling, 214 N. Y. 252; Purdy

v. Sherman, 74 Wash. 309.; Vernarelli v. Sweikert, 213 Pac. 482.

*Boyle & Priest* and *G. T. Priest* for respondent.

The court properly excluded evidence as to what defendant Faeth, about an hour after the transaction, said he was going to do. First, because there was no evidence showing that the defendant Faeth was an agent to make any such statement on behalf of the Fleischmann Yeast Company; secondly, because it was hearsay. (1) It has been firmly established that an agency cannot be established by statements of the agent. The attempt to elicit testimony as to what Faeth said he was going to do was, of course, attempting to establish Faeth's agency by Faeth's statement. For this reason alone the court properly excluded it. (2) The court properly excluded it because it was hearsay. The evidence sought to be elicited relative to what Faeth had said was a statement which had no connection with the past transaction, the accident itself, but was simply a statement as to future intention of Faeth, what he was going to do in the future, wasn't a part of the *res gestae,* because it had no reference to the actual transaction itself, and was too remote in point of time.

HIGBEE, C.—Plaintiff sued the Fleischmann Yeast Company and Joseph Faeth for damages in the sum of $15,000 for personal injuries sustained by plaintiff on April 9, 1919, by being run over by a Ford delivery truck owned and operated by the defendants. The case was tried February 7, 1922. At the close of the evidence the court instructed the jury to return a verdict for Fleischmann Yeast Company, and judgment was rendered accordingly, from which plaintiff appealed. The jury returned a verdict for plaintiff against Faeth for $3,000.

As plaintiff was walking across Clark Avenue at the intersection of Ninth Street in the city of St. Louis at about noon on April 9, 1919, he was knocked down

and run over by a Ford delivery truck owned by respondent and driven by Faeth. Respondent's name was emblazoned on the side of the truck. Plaintiff lay unconscious on the pavement and was picked up by Faeth and a policeman and driven in the truck to a near-by dispensary, where he recovered consciousness. Faeth and the policeman then took plaintiff in the truck to a police station, where Faeth agreed to drive plaintiff to his home. This was within thirty minutes or an hour after the accident. Faeth, however, started in the opposite direction. Plaintiff asked him where he was going. Faeth replied, "I am going to make some deliveries." On motion of the respondent this answer was stricken out, over plaintiff's exception, as hearsay and not a part of the *res gestae*. Whereupon plaintiff's counsel offered to prove by plaintiff that within thirty minutes or an hour after the accident Faeth stated to him that before he would take the plaintiff home he had a couple of orders to deliver for the Fleischmann Yeast Company and that he would then take him home. This offer was excluded by the court. Plaintiff further testified he was about one-third of the way across the street when he was struck; that he did not see the truck, nor hear a horn. He also testified as to his injuries.

· Jule Quick testified: "I am a teamster. I was at the intersection of Ninth Street and Clark Avenue on April 9, 1919, I was on the east side of the street right at the Columbia Transfer corner, just going across the street, and I noticed there was an old man that looked like he was going to be hit, and I turned around and seen this old man dragged ten or fifteen feet under the machine. I just had time to get a side view of the automobile before it struck Mr. Barz. It was a Ford delivery truck with the name Fleischmann Yeast Company on the side. It ran right over Mr. Barz with both right wheels. He was about fifteen feet north of the south curb of Clark Avenue when he was struck. It looked to me as if the automobile that struck Barz was going about twenty-five miles an hour. There was no horn or signal

sounded. If I had not jumped he would of gotten me, and I fell on my knees getting out of the road, and the old man was just behind me. Mr. Barz was all blood. I thought he was dead. I saw Mr. Faeth there; he was the man that drove the automobile.''

For the defendants, Joseph Faeth testified: "On April 9, 1919, I was in the employ of the Fleischmann Yeast Company, working in the shipping room. At noon on that day I got in one of the Fleischmann delivery wagons to get my lunch at the northeast corner of Ninth and Clark. I went east on Clark and there was a Belt Line car in front of me at Ninth Street. It stopped at the southwest corner, then went north and I proceeded east to turn around, and Mr. Barz was cutting the corner and he stepped right in front of my machine, and I veered to the south and tried to get out of his way, and as I did so he jumped to the north and I hit him with my left fender. The car turning north on Ninth Street obstructed my vision of any one crossing diago-nally. I blowed the horn. I saw no one else on the street at that time, and after I struck Mr. Barz I stopped the machine and helped pick him up. He asked me where he was, and I told him he met with an accident. He said he wanted to go home, and just then a policeman comes in another car, and him and I and this other gentleman helped put him in the car and we took him to the dispensary in our Ford delivery truck.''

On cross-examination: "My duties for the Fleischmann Yeast Company were to pack yeast cartons. My duties were confined inside the shipping and receiving room. I had nothing else to do. On this occasion I went out about five minutes to twelve, and I saw the truck there and I cranked it up and went, thinking I could be back before the driver came down from the office. I am not employed to drive trucks. No one said I might take the truck to go to lunch. Mr. Lee then was chief clerk over me, now Mr. Stevens. I continued to work for the Yeast Company about three months. I called them up at the police station and told them I took the

machine to go to lunch and that I had an accident and that I wanted to take this old gentleman home, and they said to go ahead and bring the car back and report to Mr. Lee. I had never taken a car out before or since. I was not discharged. After leaving the police station I went down south on Ninth to Simmons Hardware Company. I don't remember his asking me where I was taking him, nor do I remember saying to him, 'I have got a couple of orders to deliver and then I will take you home.' I made no such statement. I was dressed in a cover-all suit. It was not greasy; it had no automobile grease spots on it. Barz was about two feet away when I first saw him. I was looking directly east. After he was struck I went about five feet.''

Harvey Stevens testified: ''I am sales agent for the Fleischmann Yeast Company for the St. Louis territory. In April, 1919, I was known as general supervisor and was familiar with the general operations of the company's office. The duties of the shipping clerks were to pack the yeast and see that the shipments got out. They had no authority to perform any duties outside of the building. I don't remember whether or not I testified at the previous trial of this case that some of these shipping clerks were at times authorized to take the cars out, but my recollection is that they were not authorized to do so.''

George Butler testified: ''I am shipping clerk for the Fleischmann Yeast Company and have been for ten or twelve years. In April, 1919, I had two men working under me, Mr. Walsh and Joe Faeth. Their duties were on the inside of the building. I never instructed Mr. Faeth to use any of the company's automobiles and I did not on April 9, 1919.'' Cross-examination: ''I have never seen one of the assistants use an automobile before. I have been out with that machine and others. The agent gave me orders to take (it) out, sometimes once a week. I was the only man in the shipping department that was running a machine.

"Q. Since that time this very assistant of yours has run or has learned to run one, and has been running it since that time? A. Between April 9th and up to about six or nine months ago both of my assistants did . . .

"Q. During this time you found it necessary to run an automobile, especially this assistant other than Faeth? A. Yes, sir; he is still working, and he has driven a machine since Faeth quit there."

Plaintiff, being recalled in rebuttal, was asked to state again what Faeth said on the day he was hurt.

"By Mr. Priest: It is understood that is excluded.

"By the Court: That is the same question repeated for the purpose, I suppose, of making his record. The ruling of the court will stand. Plaintiff excepted.

"Mr. Schneider: Answer the question. A. Mr. Faeth was driving me east instead of northwest where I live. Instead of taking me home he took me in the opposite direction, and I asked him where he was going to take me to, and he said he was going down to Broadway to deliver some goods down there, and after that he would take me home. I made the remark to him, I says, 'You aren't going to deliver no goods while you got me; you are going to take me right home as you promised at the police station and at the dispensary.' That is what conversation I had with him."

Charles Barz, plaintiff's son, testified: "I was at home on April 9, 1919, when the defendant, Joseph Faeth, brought my father home, injured. Mr. Faeth took me to Dr. Gill's office. Mr. Faeth had on one of these yellow 'unionalls' overalls, and jumperlike, that is made in one piece. They looked like he had been working around machinery; looked all greasy like; looked like he had been working around greasy machinery."

"Mr. Schneider: Q. Will you state what conversation, if any, you had with Mr. Faeth at that time?

"Mr. Priest: On the part of the Fleischmann Yeast Company we object to that.

"THE COURT: Sustained as to the Fleischmann Yeast Company.

"MR. SCHNEIDER: Note my exception.

"A. I asked him to take me home right away . . . and he said: 'Well, that ain't very far, but I got a couple more orders to deliver yet before I go back.' So I got the car and went home then.

"Q. He said he had a couple more orders to deliver, and that he had to go, is that it? A. Yes, sir.

"Q. What kind of a wagon was he in at that time? A. In a truck, delivery truck.

"Q. Did you notice what kind of a truck it was? A. Yes, sir.

"Q. What kind of a truck was it? A. A Fleischmann Yeast truck.

"Q. How do you know it was a Fleischmann Yeast truck? A. Had the name on it.

"Q. Was he driving it? A. Yes, sir."

I. Appellant's first assignment of error is the exclusion of his proffered testimony that Faeth said: "I have a couple of orders to deliver for the company and then I will take you home." Appellant had offered testimony that Faeth ran over him with a delivery truck that had the respondent's name on it.

This was a business vehicle, operated during business hours. "Delivery wagons are presumed to belong to and to be operated by the persons whose business names are upon them." Fleischmann v. Polar Wave Ice Co., 148 Mo. App. 117, 133, cited approvingly in O'Malley v. Heman Constr. Co., 255 Mo. 386, 391, 164 S. W. 565, 566, where BLAIR, C., said: "There being sufficient evidence to warrant a finding of defendant's ownership of the wagon, it was not necessary to show affirmatively that the driver was defendant's servant and was acting within the scope of his employment." [Karguth v. Donk Bros., 253 S. W. 367; Guthrie v. Holmes, 272 Mo. 215, 233, 198 S. W. 854; Rockwell v. Standard Stamping Co., 241 S. W. 979, 982; Gordon v. Bleeck Automobile Co.,

233 S. W. 265; Williams v. Ludwig Floral Co., 252 Pa. 140; Ferris v. Sterling, 214 N. Y. 249, 252; Geiselman v. Schmidt, 106 Md. 580, 586.]

It cannot be doubted that plaintiff made a prima-facie showing that at the time of the accident the respondent was the owner of the delivery truck and that it was operated by its agent and servant then acting in his master's business and within the scope of his employment. Plaintiff was immediately taken by Faeth to the dispensary and thence to the police station where he agreed to drive plaintiff home in the truck. Thirty minutes to an hour had intervened since the accident. Faeth's statement to plaintiff, "I have a couple of orders to deliver for the company and then I will take you home," connected with the accident, as above stated, was explanatory of the business in which he was then engaged and of the purpose for which he was using the car at the time of the injury. These words, thus instinctively spoken, were part of the *res gestae* and were admissible to prove that Faeth was engaged in his master's business and that he had not completed the errand on which he was going at the time he was interrupted by the accident. "Declarations which are the immediate accompaniments of an act are admissible as a part of the *res gestae;* remembering that immediateness is tested by closeness, not of time, but by causal relation. "[Wharton on Ev., sec. 262, quoted in 34 Cyc. 1643.]

In Harriman v. Stowe, 57 Mo. 93, plaintiff sued for damages for falling through a hatchway negligently left insecure by the defendant. We quote on page 95: "The witness then gave testimony tending to show that plaintiff was injured about noon, what her injuries were, that he was her physician before that time and that he was called to see her between one and four o'clock of that day. At the same time she stated to him that the trapdoor in the kitchen had been left in an insecure condition, and that she stepped on it and fell through."

On page 96, Judge WAGNER said:

"The general rule is, that evidence in order to become a part of the *res gestae* should consist of declarations made contemporaneously, or nearly so, with the main event by which it is alleged that the principal transaction occurred. [Brownell v. Pacific R. R. Co., 47 Mo. 239.]

"But in the Insurance Co. v. Mosely, 8 Wall. 397, where the question was carefully and ably considered, it was declared that though generally the declarations must be contemporaneous with the event, yet where there are any connecting circumstances they may, even when made some time afterward, form a part of the whole *res gestae*.

"So in Commonwealth v. McPike, (3 Cush. 181) the indictment was for manslaughter, the defendant being charged with killing his wife. It appeared that the deceased ran up stairs from her own room in the night, bleeding and crying 'murder.' Another woman, into whose room she was admitted, went at her request for a physician. A third person, who heard her cries, went for a watchman, and on his return proceeded to the room where she was. He found her on the floor bleeding. She said the defendant had stabbed her. The defendant's counsel objected to the admission of this declaration in evidence. The objection was overruled. The court decided that the evidence was properly admitted. It was said that it was of the nature of *res gestae*. It will be observed that the declarations were not contemporaneous, but that considerable time must have elapsed between the time when the act was committed and that when the declarations were made; but the screams of the injured woman, her running into another room, her being found bleeding upon the return of the person who went for the watchman, all formed connecting links and rendered the declarations equally as satisfactory as if they had been made at the time the wounds were given. In the present case the witness came within a short time after the plaintiff received the injuries. He found her suffering, and she told him how she was hurt, namely, by falling through

the trap door. The accident and the declarations formed connecting circumstances, and in the ordinary affairs of life no one would doubt the truth of these declarations or hesitate to credit them as evidence. I can perceive no valid objection to their admissibility."

See also Parr v. Ill. Life Ins. Co., 178 Mo. App. 155, 160-2; State v. Thompson, 132 Mo. 301, 322, 323.

II. In Peck v. Ritchey, 66 Mo. 114, 118, we said: "That the declarations of a person, who assumed to act as agent of another, are not admissible to establish the agency, is well settled; but it is equally well settled, that after the party alleging the agency has made a prima-facie case of agency against the principal, any declarations made by the agent in the prosecution of, and relative to the business contemplated by such agency, are admissible against the principal."

See also Werth v. Ollis, 61 Mo. App. 401, 407; Oil Well Supply Co. v. Metcalf, 174 Mo. App. 555, 560.

"When the fact of agency be otherwise prima-facie established, the acts and declarations of the agent become admissible in corroboration." [Wharton v. Tierney Toner Co., 217 Pac. (Wash.) 998.]

The court erred in the exclusion of the proffered evidence.

III. Did the court err in directing a verdict for the respondent? Respondent relies upon Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854. In that case the defendant and his family were leaving the city for a few days. They were driven to the station by defendant's chauffeur, Hettenbaugh. Defendant directed him to take the automobile back to defendant's garage. Hettenbaugh left the station at about 1:30 P. M. The accident occurred about 7:30 P. M. Plaintiff's intestate, Whimster, took the deposition of Hettenbaugh and read it at the trial. It was proven by this witness that, instead of returning the car to the garage, as directed, he and others went on a drunken joy ride all the afternoon. On page 240 we

quote: ''All that is shown with any degree of definite-ness is that the chauffeur and his companion, still in pur-suit of a drunken carouse, returned downtown, secured dissolute companions, procured a supply of intoxicants and headed straight for the country, injuring plaintiff on their way.'' This proof was made by the plaintiff's wit-ness. The prima-facie case, resting on the presumption that the chauffeur, while driving his master's car was acting in the line of his employment, was thus overthrown by the testimony of plaintiff's own witness. The case is clearly distinguishable from the one under considera-tion, and affords no support for respondent's contention. The Guthrie case was relied on also in Karguth v. Donk Bros., 253 S. W. 367, 370 (1).

It is contended by the respondent that it was shown by the respondent's evidence that Faeth was not acting within the scope of his employment, but was bent on his own business at the time of the accident, and that, as plaintiff offered no evidence to overcome or put in issue the evidence so introduced by respondent, it was en-titled to a directed verdict. This is a misconception. Respondent concedes that plaintiff made a prima-facie case. Respondent then took the laboring oar. We will not stop to point out the glaring contradictions in the evidence. The jury, however, was not bound to believe respondent's evidence even if it had not been contra-dicted. [Diehl v. Fire Brick Co., 253 S. W. 984 (10).]

In Peterson v. Railroad, 265 Mo. 462, 479, 178 S. W. 182, Judge WOODSON said: ''As held in paragraph one of this opinion, the plaintiff having made out a prima-facie case, then according to the rule just announced the bur-den rested upon the defendant to disprove and over-come that case, to the satisfaction of the jury. That, of course, means that the jury and not the court must pass upon the credibility of the witnesses and the weight to be given to their testimony. That is, after a prima-facie case has once been made out, the case can never be taken from the jury.'' [Citing many cases.]

This proposition was thus stated in Gannon v. Gas Co., 145 Mo. 502, 517: "The right to judge the weight of evidence and the credibility of witnesses, implies of necessity the right to resist the influence of any part of what the witnesses may have testified to; of saying that it wants in the power to convince. If the mere presentation of evidence of a fact is to be called its proof, because undisputed by any other witness or witnesses, then the right to judge the weight of evidence and the credibility of witnesses in such cases means nothing. There must not only be the presentation of the evidence of a fact by a witness or witnesses, but its acceptance by the jury before proof can be said to have been made complete upon any given point, and if what has been uttered or said by a witness or witnesses fails to convince the mind or intelligence addressed, has not been accepted by them, then no sufficient proof has been made, however positive or unqualified the utterance of the witnesses upon which a finding can be predicated. The office of the court in the trial of a case by the jury is not to say when proof has been made sufficient for a verdict, but is limited to instructing when testimony offered tends or does not tend to establish a given fact or facts in issue. Testimony may tend in many instances to prove a given issue that falls far short of convincing proof."

"The right of trial by jury, as heretofore enjoyed, shall remain inviolate." [Sec. 28, Art. II, Constitution.]

On the evidence adduced, we think the plaintiff was entitled to have the facts found by the jury and not by the court. The last two cases cited stated the general rule, to which, no doubt, there may be exceptions.

The judgment is reversed and the cause remanded. *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion of Higbee, C., in Division Two, is adopted as the opinion of Court in Banc. *Walker, White* and *Woodson, JJ.,* concur; *Atwood, J.,* concurs in the result; *Graves, C. J.,* and *David E. Blair* and *Ragland, JJ.,* dissent.