## SILENT AUTOMATIC SALES CORPORATION v. STAYTON.

### No. 8750.

Circuit Court of Appeals, Eighth Circuit.
Nov. 28, 1930.

Rehearing Denied Jan. 10, 1931.

472

See also 45 F.(2d) 476.

George T. Priest, of St. Louis, Mo. (Boyle & Priest, of St. Louis, Mo., on the brief), for appellant.

Richmond C. Coburn, of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and OTIS, District Judge.

VAN VALKENBURGH, Circuit Judge.

This is an action for personal injuries against appellant, a Delaware corporation, engaged in the business of selling oil burners in the city of St. Louis, Mo. April 27, 1928, a Ford automobile truck, driven by an employee of appellant, collided with an automobile, driven by the husband of appellee, in which appellee was riding, and the injuries sued for resulted. The accident occurred at the intersection of Oakland and Clayton avenues in said city. The trial resulted in a judgment for appellee. The truck in question was the property of one Clyde Smith, who was installation and service manager of appellant. The truck was used in the business of appellant. On its side panels were painted the words "Silent Automatic, 3546 Washington Avenue." On each side of the driver's cab were painted certain insignia, embodying a torch and flame, in the nature of a trade-mark, with the words "Silent Automatic" above and "Noiseless Oil Burner" below this mark. Similar signs were at one time displayed in front of appellant's place of business at 3546 Washington avenue.

Smith, in his testimony, described the status of the truck thus: "Well, I received a salary of $250.00 a month; that included the use of the truck." On the day in question Smith, as installation manager, had sent a crew out to install a burner at an apartment house in St. Louis. This crew consisted of Eugene Bill, Walter Dittmar, Marvin Sutterfield, and Harry Dittmar. Having completed the installation, they were on their way home when the collision occurred. This was in accordance with customary practice. This practice was that after completing an installation the men would, with the company's consent, be driven home in the truck, which was kept overnight in Dittmar's back yard. The following morning it would be driven from Dittmar's house to the office of appellant for the work of the day. The truck carried a tool box; and whatever material was left over, after the completion of an installation, was cared for by the men and returned to the company the following morning. There were tools and material of appellant in the truck at the time of the collision with

appellee's car. It was driven by Harry Dittmar.

The assigned errors relied upon are:

1. Refusal to sustain at the close of the evidence appellant's demurrer based upon the claim that no showing had been made that, at the time of the collision, the driver of the truck was engaged in the line of his duty and within the scope of his employment.

2. Certain portions of the charge to the jury.

3. The action of the court in sustaining objections of appellee to certain arguments of counsel for appellant.

1. We consider first the action of the court in overruling the demurrer interposed at the close of the evidence in the case. The reason assigned by appellant, as the basis of its demurrer, was that no showing had been made that the driver of the truck was engaged in the line of his duty and within the scope of his employment. Much argument is devoted to the proposition that the presumption of liability, arising from the fact that the truck carried upon its panels and sides the name and address of the defendant company and insignia suggestive of its business, was a vanishing one in the face of uncontradicted proof to the contrary. In this connection an examination of some of the cases cited and considered may be instructive.

Starting with Missouri, in which state this controversy arose, the Supreme Court, in Barz v. Fleischmann Yeast Co., 308 Mo. 288, 300, 271 S. W. 361, 364, points out that when plaintiff makes a prima facie case the respondent then takes the laboring oar, and the jury is not bound to believe respondent's evidence even if it has not been contradicted [a proposition of wide spread and authoritative acceptance. Reiss v. Reardon (this court) 18 F.(2d) 200, and D'Aleria v. Shirey (C. C. A. 9) 286 F. 523], and quotes approvingly from Peterson v. Railroad, 265 Mo. 462, 479, 178 S. W. 182, that "after a prima facie case has once been made out, the case can never be taken from the jury." It was there held that the facts that the truck causing the injury was used by the defendant yeast company in its business, and, was driven by an employee of that company, together with the further fact that, emblazoned upon it, was defendant's company name, made a prima facie case against defendant which placed upon it the burden of proving that the driver was not using the truck in his master's business and within the scope of his employment.

In Burgess v. Garvin, 219 Mo. App. 162, 272 S. W. 108, it was held that where a canvasser, in soliciting business, used his own automobile with his company's consent, and, when finishing his day's work, would take the automobile with the company's goods to a private garage, where they would be stored for the night, and was on his way to the garage at the time of plaintiff's injury, such person was then and there acting within the scope of his employment.

In Mann v. Stewart Sand Co., 211 Mo. App. 256, 243 S. W. 406, the name of the defendant was printed on the side of the truck. Defendant offered no evidence, but stood on its demurrer. It was held that the name on the truck raised a presumption that the truck was owned by it and operated by it or by its servant acting within the scope of his employment. In Fleishman v. Polar Wave Ice & Fuel Co., 148 Mo. App. 117, 127 S. W. 660, the holding was the same.

In Murphy v. Tumbrink (Mo. App.) 25 S.W.(2d) 133, 134, the evidence did not show who was driving the car. The defendant offered no testimony, but demurred to the evidence. Held, in the absence of any showing as to who was driving the car, that the presumption was that it was being driven by the owner, or by his servant acting within the scope of his employment. Held further that this "presumption is a mere rule of procedure, and is put to flight by an unequivocal showing on the part of the owner that the car was not driven by him, nor by his servant acting within the scope of his employment."

The Supreme Court of Missouri, in Bond v. St. Louis-San Francisco Ry. Co., 315 Mo. 987, 288 S. W. 777, says that this presumption is a mere rule of procedure shifting the burden of evidence to defendant.

Curry v. Stevenson, 58 App. D. C. 162, 26 F.(2d) 534, recognizes the presumption, but holds that it may be overcome by uncontradicted proof to the contrary; that, in such case, the question is one for the court and not for the jury.

It is felt to be unnecessary to multiply cases that may be adduced upon the lines indicated in the foregoing citations. The obvious rule deducible therefrom is that the presumption created vanishes, if at all, only when rebutted by uncontradicted proofs. That, in such case, the question is one for the court, and it would follow, we think, that the court would take the matter from the jury only upon the well known principle that the evidence in a given case is so clear that rea-

sonable men cannot differ as to the verdict which ought to be rendered.

In the case at bar the status of the truck does not rest solely upon the words and insignia painted upon its sides. There is no dispute as to the ownership of the car, nor that it was used in the business of appellant. The fact that ownership was in Smith, an employee, instead of in appellant, cannot avail the latter. Yellowway v. Hawkins (C. C. A. 8) 38 F.(2d) 731. The crucial question upon this phase of the controversy is whether the employee-driver was then and there engaged in the line of his duty, and within the scope of his employment. Upon this point there is no categorical contradiction. The issue must be resolved upon the undisputed facts as outlined above.

The great weight of reason and authority is to the effect that where an employee is returning from work, with the consent and by authority of the employer, in a vehicle owned or used in the business of the employer, he is acting within the scope of his employment.

"Where a master places at the disposal of his servant an automobile to be used by the servant in going to and from his work, the transportation is beneficial to both, and the relation of master and servant continues while the automobile is used for such purpose." Dunbaden v. Castles Ice Cream Co., 103 N. J. Law, 427, 135 A. 886; Auer v. Sinclair Refining Co., 103 N. J. Law, 372, 137 A. 555, 54 A. L. R. 623; Ackerson v. Jennings Co., 107 Conn. 393, 140 A. 760, 56 A. L. R. 1127.

The benefits of such use are reciprocal between the parties. This use of the truck inured to the employer's benefit, saved its time, protected its property, and facilitated the handling of its business generally. American Produce Co. v. Gonzales (Tex. Civ. App.) 294 S. W. 273; Friend-Rowe Motor Co. v. Ricci (Tex. Civ. App.) 293 S. W. 851. See especially Barz v. Fleischmann Yeast Co., and Burgess v. Garvin, supra. We feel that there was an ample showing made that Dittmar, the driver of the truck used in appellant's business, was, at the time of the collision, engaged in the line of his duty and within the scope of his employment.

2. In the charge of the court to the jury the following paragraph appears:

"At the threshold of the case, we have something to notice which does not always appear in cases of that kind, and that is the question as to whether or not the driver of the Ford truck in question was an agent of the defendant and engaged in the performance of his duty at the time of the collision mentioned here in the evidence. Now, the defendant would be responsible for some acts of his agent, if they were negligent and if they were performed at a time when the agent and servant was engaged in the performance of his master's duty, and in this case, before you could find the defendant responsible for any negligence, if you think there was any negligence in this case, you would have to determine that Harry Dittmar, the driver of the truck, was, at the time of this collision, engaged in the performance of some duty for which he was employed by the defendant, the Sales Corporation, and if you believe from the evidence that at the time of the collision between the automobiles the truck driven by Harry Dittmar was being driven by him to his own home, for his own convenience, then the Court instructs you that you would not be justified in returning a verdict in favor of either of the plaintiffs. And so at the threshold of this case you have that question to determine, and if you determine from your consideration of the evidence that Harry Dittmar was, at the time of this collision, engaged in performing some duty for his employer, a duty which was in the line of the work intrusted to him, why you will then go ahead and consider whether or not he was guilty of some negligence in the performance of that duty. On the other hand, if at the threshold of the case you decide that Harry Dittmar was not, at the time of this collision, performing some of his regular duties for his employer, why that ends the case, and you should find against both of the plaintiffs in the case."

Appellant assigns error to the closing language, beginning with the words "and so at the threshold of this case you have that question to determine." To this part of the charge no exception was preserved; but if there had been, no error appears. The language used aptly, clearly, and correctly submits to the jury an important issue in the case. Exception was taken to the following language of the charge and error assigned:

"Now, the second ground of negligence that we direct your attention to is also based upon an ordinance, which probably is nothing more than the ordinary law upon the subject, either, but the ordinance provides that all vehicles when in operation shall be kept as close to the right-hand side of the street as practicable. Now, if you believe, gentlemen, from the evidence in this case, that the driver

of this Ford truck, while engaged in the performance of his master's duty, failed to keep as near the right-hand side of the street upon which he was driving it, as was practicable at the time of this collision, and if you believe that that act on his part was negligence, under the circumstances, having in mind the time and the place, and if you think that these plaintiffs, or either of them, suffered an injury as a direct result of that negligence, then you would be justified in finding for plaintiffs on that ground. Of course, if you find that the defendant was not negligent in that respect, of course you would not base a verdict on any such ground."

■ The claim is that the evidence fails to establish any causal connection between the violation of the city ordinance and appellee's injuries. We do not so read the record. It is not disputed that the truck was driven for some distance on the wrong side of the street, and its erratic course, evidencing imperfect control in the driver, may well have been a contributing cause of the accident. The more generally accepted rule is that the violation of ordinance provisions may be considered by the jury as a circumstance from which negligence may be inferred. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 418, 12 S. Ct. 679, 36 L. Ed. 485. The court correctly submitted this assignment of negligence.

■ 3. In the course of the closing arguments the following occurred:

"Mr. Priest: (After stating that there is not a scintilla of evidence that these men were on any business for the Company) * * * There is no impeachment here of a witness who said that.

"Mr. Coburn: I want to object to the statement that counsel is making there. He has no right to argue that there is no evidence; there is evidence that these men were working for the Company at the time, or your Honor would have sustained his demurrer to the evidence.

"The Court: Sustain the objection.

"Mr. Priest: I say they were not working for the Company that evening at the time they were going home; they were going home on their own duty; that is all I said and all I intended to say; he was going home for himself, his own convenience, his own pleasure, and there is not a scintilla of evidence in this case to the contrary.

"The Court: Sustain the objection.

"Mr. Priest: Well, if there is any to the contrary, I want to know it. If there is any evidence in this record that shows there was anything other than his own business, I want to see it, I want counsel to point it out to me now.

"Mr. Coburn: Right now, Mr. Priest?

"Mr. Priest: Yes, sir; right now.

"Mr. Coburn: I will do it in my argument, when I get to it.

"Mr. Priest: He was going home for his own convenience. He was taking himself home. So much for that. May I be allowed an exception to the Court's ruling on my argument?

"The Court: Well, you may, Mr. Priest."

Appellant assigns these rulings of the court as error. Its position is thus stated:

"It amounted to a direct instruction to the jury that the court was of opinion that the appellee had shown that the driver of the truck was acting within the line of his duty and the scope of his employment at the time the collision between the two cars took place, and that the appellant was thus liable."

■ It may be freely conceded that courts should accord to counsel great freedom in the discussion of issues, so long as the exclusive province of the court in its declaration of the law is not invaded; and that, in the instant case, this matter of controversy could have been cared for more satisfactorily in the subsequent charge of the court than by sustaining the objections complained of. However, even if this action of the court be considered technically to amount to error, it does not follow that it must necessarily result in reversal. To have this effect it must have been so prejudicial as presumably to have conditioned the verdict and judgment.

We should "give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." USCA, title 28, § 391, p. 385.

The action of the court in sustaining the objections certainly did not "amount to a direct instruction to the jury that the court was of opinion that the appellee had shown that the driver of the truck was acting within the line of his duty and the scope of his employment at the time the collision between the two cars took place, and that the appellant was thus liable," as claimed by counsel for appellant. At most, it could be interpreted only as an indirect intimation that there was some evidence from which such an inference was permissible. In view of the undisputed testimony on this point, and the inescapable effect thereof, the question of the status of

the employee at the time of the collision was largely one for the court, although, perhaps, proper to be submitted to the jury. We think, under our view, hereinabove expressed, that the court would have been justified in charging the jury directly that the driver of the truck, under the undisputed facts, was acting within the line of his duty and the scope of his employment. But the court did not do this, preferring to allow the jury to pass upon the ultimate issues unaffected by the potential influence of such a substantial ruling against appellant. Furthermore, in that portion of the charge hereinabove first quoted, the trial court so fully, clearly, and explicitly submitted this question to the determination of the jurors that they must be held to have entered upon their deliberations with no misunderstanding of their powers and duty in this respect.

Finding no substantial error in the record, the judgment is affirmed.