**LUKEHART v. GLEASON.**
**No. 14808.**

United States Court of Appeals
Eighth Circuit.

Nov. 2, 1953.

J. D. Robertson, Marshalltown, Iowa, for appellant.

Ralph W. Gearhart, Cedar Rapids, Iowa (Caryl W. Garberson, Harry E. Wilmarth, Cedar Rapids, Iowa, Herschel G. Langdon, Des Moines, Iowa, Elliott, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, Herrick & Langdon, Des Moines, Iowa, of counsel, on the brief), for appellee.

Before JOHNSEN and COLLET, Circuit Judges, and NORDBYE, District Judge.

COLLET, Circuit Judge.

Appellee, whom we will refer to as the plaintiff, recovered a judgment for damages to his truck caused by a collision with defendant's automobile about 2:45 a. m., December 2, 1951.

Norman Woodsmall and defendant lived at Marshalltown, Iowa, and had been "keeping company", as she expressed it, for several months prior to December 2, 1951. Defendant owned a 1951 Chevrolet car. Woodsmall did not own a car. Defendant was employed as a nurse at a hospital in Marshalltown, Iowa. Woodsmall had been unemployed until about a week prior to December 2, 1951. During that week he was working for a furnace company in Marshalltown. Defendant lived with her two minor sons and a housekeeper about a mile and a half from where Woodsmall roomed, and about three miles from the hospital where she worked. The two frequently went places together in defendant's car. Woodsmall usually drove the car. Defendant's working hours at the hospital were from 11 p. m. until 7 a. m. During the week preceding December 2, 1951, on three occasions Woodsmall had taken defendant to the hospital at 11 p. m. and called for her at 7 a. m. in the car. Although defendant testified that Woodsmall was supposed to take the car to defendant's garage at her home, she conceded that he probably had possession of the car overnight on these and other similar occasions. Since it would have been necessary for Woodsmall to walk a mile and one-half, after 11 p. m., to his home from her garage, and back the same distance before 7 a. m. to get the car to pick up defendant at the hospital, and there is no evidence that he did so, the inference may be drawn that he had been in the habit of frequently keeping the car overnight.

On December 1, 1951, Woodsmall called for defendant at the hospital at 7

a. m. They went to her home and had breakfast. They stayed there for a time and then went shopping, Woodsmall accompanying defendant on all her calls except to a dress shop. They then went back to her home and had dinner. About the middle of the afternoon they went back downtown and were seen together at several beer taverns. During the afternoon, Woodsmall and four other men planned a trip to a night club that night. There is no direct evidence that defendant knew of the plan, but she met two of those who were to go and was with Woodsmall or close by during the afternoon. About 3:30 or 4 p. m. one Raymond L. Politz talked to them at a tavern and saw them drinking beer. At this time, while Politz was there, Woodsmall observed that he hesitated or did not like the idea of driving defendant's car, whereupon, according to Politz, defendant said that Woodsmall could drive her car any time he wanted to and took the car keys out of her purse and gave them to him. This incident is not denied by defendant, but she merely states that she did not recall making that statement, and further, that she did not remember taking the car keys out of her purse and handing them to Woodsmall, as related by Politz. Later, Woodsmall and defendant went back to defendant's home for supper, and about 8 p. m. they went back uptown and after driving around for a time went to a beer tavern. There they had a bottle of beer and ate a lunch. Defendant had to be at work at 11 p. m., and shortly before that time Woodsmall took defendant to the hospital. She says that he was to go back and finish his lunch at the beer tavern and then take the car to the garage. Instead, the car was driven approximately 24 miles east to the night club. It was observed parked there after midnight. Woodsmall was not seen at the night club by anyone who knew him, but at least two of those who had planned the trip that afternoon were observed there. About 2:45 a. m., defendant's car collided head-on with plaintiff's truck as it was being driven back to Marshalltown. No one knows who was driving defendant's car at the time, as all five persons in the car, including Woodsmall, were thrown from the car and instantly killed.

■ Plaintiff sued defendant for the damages to his truck, under the Iowa statute which makes the owner of a car driven with the owner's consent liable for the negligent act of the driver,[1] and upon the common law rule that one who loans his car to one known to be incompetent may be held for damages caused by the incompetent. It was charged that Woodsmall was drunk, and that defendant loaned him the car when she knew he was drunk. The sufficiency of the proof of negligence or the damage done is not challenged. The only question presented is whether the evidence is sufficient to go to the jury on the question of whether Woodsmall was driving the car at the time of the accident. The sufficiency of the proof that Woodsmall had defendant's consent to drive it on the night of the accident is not challenged, although defendant testified it was without her authority. As the law requires, after verdict of a jury, we must and have viewed the evidence in the aspect most favorable to the jury's verdict.

■ The action arising under the law of Iowa, the law of that state will be applied. Under the law of that state if ownership of an automobile be established (it is admitted here) a rebuttable presumption arises that it is being driven with the owner's consent. Landry v. Oversen, 187 Iowa 284, 174 N.W.

---

1. "321.493 Liability for damages
"In all cases where damage is done by any car by reason of negligence of the driver, and driven with the consent of the owner, the owner of the car shall be liable for such damage." 1950 Code of Iowa, I.C.A.

255; Seleine v. Wisner, 200 Iowa 1389, 206 N.W. 130; Curry v. Bickley, 196 Iowa 827, 195 N.W. 617. But was the person who had defendant's consent to drive the car—Woodsmall—driving it? Defendant asserts that the jury's conclusion that he was driving it was based on conjecture alone. That is not the situation. As stated in Claussen v. Estate of Johnson, 224 Iowa 990, 278 N.W. 297, a theory may not be said to be established by circumstantial evidence even in a civil action unless the facts relied upon are of such nature and so related that it is the only conclusion that can fairly and reasonably be drawn from them, and it is not sufficient that the facts and circumstances merely be consistent with the conclusion sought to be established, they should be inconsistent with any reasonable theory to the contrary. But the only fact shown of any consequence indicating that Woodsmall was not driving is the statement of a witness that one of the men killed said before the trip that he was going to drive. Absent that statement, there is no evidence reasonably indicative of any theory other than that Woodsmall was driving. That statement was insufficient to destroy the value of the other facts and circumstances as a matter of law. It was not shown to have been made in Woodsmall's presence or with his knowledge and could not be said as a matter of law to have such probative force, against the established facts that Woodsmall had been given possession of the keys by defendant, was the last person identified as having driven the car, was not shown to have turned the keys over to anyone else and was in the car at the time of the collision, as to make the situation one of naked legal conjecture as to who was driving the car. It would appear to be unreasonable to assume that Woodsmall was not driving the car. The inference created by the law of Iowa, together with the circumstantial evidence, constitutes sufficient support for the jury's verdict.

The judgment is affirmed.