**ROSE**

v.

**RUAN TRANSPORT CORP.**

**No. 11105.**

United States Court of Appeals
Seventh Circuit.

Aug. 3, 1954.

Rehearing Denied Aug. 31, 1954.

Major, Chief Judge, dissented.

John E. Cassidy, Peoria, Ill., for appellant.

Lyle W. Allen, Peoria, Ill., for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

Defendant appeals from a judgment rendered against it in plaintiff's suit for damages for personal injuries. It urges that the verdict upon which the judgment was based was not supported by "substantial evidence"; that its evidence negated entirely the testimony of plaintiff's witnesses and conclusively rebutted any presumption arising from the circumstances proved, and that the trial court erred in refusing to give a tendered instruction.

The facts, viewed, as they must be, in the light most favorable to plaintiff,

are in brief as follows. On March 22, 1952, plaintiff, while driving a westbound Greyhound bus on U. S. Route 30, near Wheatland, Iowa, shortly before 8 p. m. approached a curve to the left. Seeing the lights of an on-coming vehicle and thinking it was partially on his side of the road, he turned the bus to the right, and in doing so, drove off the pavement onto the shoulder to avoid a collision. As he tried to get back on the highway, he lost control of the steering-wheel, fell off his driver's seat and was injured.

No question is raised as to the liability of the driver of the other vehicle, a gas transport truck and trailer, for the injuries suffered by plaintiff. But defendant contends that the evidence submitted by plaintiff was wholly insufficient to support a finding that the offending truck belonged to it or was being used with its consent.

Two passengers on the bus, Mr. and Mrs. William Castle, testified in plaintiff's behalf. Mr. Castle said that the trailer was painted white and bore in black letters on its side the name "Ruan." His wife testified that she saw the same name on the side of the trailer; that she had seen trucks of defendant passing her home on the highway and was familiar with the type of vehicle operated by defendant. Plaintiff testified that the truck was painted red and the trailer white. One Baker testified for defendant that, on the night in question, he drove such a red truck and white trailer bearing in black the word "Ruan" over Route 30, but insisted that he passed the place of the accident some thirty minutes or more before it occurred; that he checked in at his terminal, some thirty-five miles or more away, at 9:05 p. m.; but that he stopped to eat on the way.

■ Upon the direct testimony of plaintiff's witnesses that the trailer was white, the truck red, and that the word "Ruan" was on the trailer, the court permitted the cause to go to the jury. That it was sufficient to bind the defendant, we think, is obvious. Under the law of

Iowa, which is applicable, proof of ownership or proprietorship justifies, in the absence of evidence to the contrary, a finding of responsibility for operation of an automobile. Curry v. Bickley, 196 Iowa 827, 195 N.W. 617; Heavilin v. Wendell, 214 Iowa 844, 241 N.W. 654, 83 A.L.R. 872; Seleine v. Wisner, 200 Iowa 1389, 206 N.W. 130. That the evidence was sufficient to justify an inference of ownership and operation is clear. Thus, in Falstaff Brewing Corp. v. Thompson, 8 Cir., 101 F.2d 301, at pages 304–305, where a collision occurred between an automobile and a motor truck and defendant denied that it was operating any vehicle at the time and place of the collision, and the identification was, as here, by the name on the truck, the court said: "To be sure, each of defendant's drivers denied that he was driving the truck, and there was testimony that none of defendant's trucks were in this part of the city at the time of the accident. But the jury was not required to believe this testimony, especially in view of testimony definitely identifying the accused truck as that bearing the names identifying it as defendant's * * *. It is only when uncontradicted proof clearly and distinctly establishes a fact so that reasonable minds can draw but one inference, that the presumption disappears or is destroyed. * * * In view of the verdict of the jury, we can not say that the testimony of the witnesses who said they could read the signs on the truck on the day of the accident was incredible or unworthy of belief." To the same effect are Indemnity Insurance Co. of N. A. v. Kellas, 1 Cir., 173 F.2d 120; Silent Automatic Sales Corp. v. Stayton, 8 Cir., 45 F.2d 471; Lukehart v. Gleason, 8 Cir., 207 F.2d 529. The last cited decision is an Iowa case.

■ Defendant insists that to hold the evidence sufficient to go to the jury is to pile inference upon inference. We do not so interpret the situation. We agree with the authorities cited that proof such as is presented here makes a prima facie case of ownership and operation. Both conclusions of fact spring from the

same circumstances,—the presence and operation of a truck bearing defendant's name. This is not piling inference upon inference. As the Supreme Court of Iowa said, in Seleine v. Wisner, 200 Iowa 1389, 206 N.W. 130, 131: "We have also held that an allegation of ownership carries with it an inference of law, to wit, that the car was operated by the owner or, if by some one else, that it was with the owner's consent." And it is permissible to draw several conclusions or presumptions of fact from the same set of facts or circumstances. Falstaff Brewing Corp. v. Thompson, 8 Cir., 101 F.2d 301.

■ Obviously such a prima facie case as this can be said, as a matter of law, to vanish only when rebutted by uncontradicted or invulnerable proofs. Silent Automatic Sales Corp. v. Stayton, 8 Cir., 45 F.2d 471; it is not necessarily wiped out by contradictory evidence, for the jury is not bound to accept the opposing testimony offered by defendant. Indemnity Insurance Co. of N. A. v. Kellas, 1 Cir., 173 F.2d 120. Consequently, when defendant offered in contradiction, the testimony of Baker, its former truck driver, who, on his own admission, was driving one of the company's trucks and trailers near the place of the accident shortly before it occurred, though he said he saw no accident, the jury was charged with the obligation to determine where the truth lay. Such was its function; it is not for us to say that it made the wrong determination.

■■ But defendant insists that the testimony of plaintiff's witnesses was so preposterous and so incredible that it did not justify the trial court's submission to the jury. In support of this it points to earlier statements of the witnesses, taken by a claim agent of Greyhound, conflicting with their testimony at the trial. Whether these witnesses were credible; whether they were to be believed, in view of all the circumstances, impeaching, or otherwise, including their own explanations, was a question rightfully submitted to the triers of the facts.

Only where there is a complete absence of probative facts to support the conclusion reached does reversible error appear. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916. It does not lie within our power to say, as a matter of law, that the testimony was not substantial, credible or believable. That is the function of the trier of the facts. Grip Nut Co. v. Sharp, 7 Cir., 150 F.2d 192, certiorari denied 326 U.S. 742, 66 S.Ct. 55, 90 L.Ed. 443.

■ Defendant complains of the refusal to give a tendered instruction in which defendant asked to charge the jury that "when any credible evidence is introduced by defendant showing it did not operate the vehicle, such presumption (of operation by defendant) vanishes entirely * * *." Obviously the statement quoted is not sound law. The presumption of ownership and operation does not necessarily vanish upon the production of "any credible evidence to the contrary." It vanishes only when the jury finds the contrary evidence to be of such character as to outweigh or counterbalance the prima facie case made by plaintiff. To have instructed the jury as defendant requested, would have constituted error. Furthermore the charge to the jury as a whole fully and amply covered correctly the principles governing credibility, impeachment, and plaintiff's burden to prove the averments of his complaint.

The judgment is

Affirmed.

MAJOR, Chief Judge (dissenting).

I would reverse on the ground that there was no substantial proof in support of the jury finding that defendant's truck was responsible for the accident which caused plaintiff's damages. Whether there was such proof depends entirely upon the testimony of plaintiff and two of his passengers, William F. Castle and Marie Castle, his wife, both of whom were seated at the time of the accident at the front end of the bus, near plaintiff.

The accident occurred about 8 p. m. on March 22, 1952. Plaintiff, driving his bus 25 or 30 miles per hour on a two-lane highway which curved to the left, discovered the offending truck approaching on his side of the highway. For this reason plaintiff turned to his right and on to the shoulder of the highway. In bringing his bus to a stop he was thrown from the seat and sustained injuries. Both the bus and the offending truck had their headlights on. There was no proof as to the speed of the offending truck, although the complaint alleged that it was traveling at a "fast and dangerous rate of speed," and the testimony shows that it did not stop but went by like a flash. One witness stated that there was only an arm's length between it and the bus. The night was dark, it had been snowing and the highway shoulder was described as soft and muddy.

Shortly after the accident, a Mr. Harmon, claim agent for the Interstate Transit Lines, Inc., the same company by which plaintiff was employed as a bus driver, commenced an investigation for the purpose of ascertaining the identity of the offending truck. On March 23, he procured from Mr. and Mrs. Castle detailed statements as to the circumstances surrounding the accident and, on June 3, 1952, he obtained a similar statement from the plaintiff. All of these statements bore the signatures of the respective parties and in their own handwriting the statement, "I have read the above and it is true."

Plaintiff in his statement of June 3 stated, "I cannot state what company the truck may have belonged to as I did not make out the name of the trailer," and "The sole cause of the accident was the fact this unknown truck was in the center of the highway and forced me off the highway." On March 13, 1953, plaintiff testified in Peoria, Illinois, in a proceeding the exact nature of which the record does not disclose. During that examination, which was taken by a reporter, the following questions were propounded and answers given:

"Q. Did you see black letters there [referring to the trailer]? A. Well, you know what I mean, a black streak. I couldn't say that I read it.

"Q. But all you actually saw was the black streak? A. That's right.

"Q. Well, then, all you actually saw was the black streak as this truck went by you, isn't that right? A. Yes.

"Q. You didn't read any letters, did you? A. I said I visualized them by my eyes."

At the trial plaintiff testified that the offending truck was that of defendant, that it was a red tractor and white trailer, with the word "Ruan" lettered in black on the side of the trailer. On cross-examination, the following appears:

"Q. You didn't read any letters on the vehicle coming toward you or any words on it? A. I visualized.

"Q. You mean you imagined it? A. No, I visualized it.

"Q. You didn't actually read any lettering or any wording on the vehicle coming toward you? A. Well, visualizing, yes.

"Q. You are not testifying as to what you actually saw? You are testifying to what you visualized, is that true? A. Well, to a certain extent.

"Q. And when you testified on March 13 that you couldn't read anything on the truck you were telling the truth, weren't you? A. Yes."

Plaintiff was cross-examined concerning his statement to the claim agent made on June 3, 1952, in which he had positively stated that he "did not make out the name of the trailer." At no time did he testify that he did not make that statement or that it was other than a voluntary statement. That statement when introduced in evidence was in typewritten form, and plaintiff testified in an uncertain fashion that it was in longhand when he signed it. No explanation was offered as to how his signature and the

statement in his own handwriting, "I have read the above and it is true," could have been transformed from one form of statement to another.

The testimony of Castle and his wife follows the same pattern as that of plaintiff. The former in his statement to the claim agent, March 23, 1952, stated, "I was unable to determine the color of the truck or the name on the side." Mrs. Castle at that time stated, "The truck was a Gasoline Transport but I could not say as to the name on the truck." Castle at the trial testified that he saw the word "Ruan" on the side of the truck. The following questions and answers are significant:

"Q. Is it true from the entire time you went off the pavement until the bus came to a stop you had your eyes fixed on the right side of the highway? A. Yes, sir.

"Q. When you came to a stop, this vehicle going in the opposite direction had passed you? A. Yes."

He admitted making the statement to the claim agent on the day after the accident and offered no explanation as to why he had changed his testimony on the essential point of identity other than that he was not under oath when he made the statement the day after the accident. Mrs. Castle testified at the trial that she saw the name "Ruan" on the side of the offending truck. The following questions and answers are shown with reference to the statement previously given the claim agent:

"Q. And no compulsion or threats were exercised over you to sign it? A. No, he told me it would be very confidential.

"Q. But, nevertheless, it was your statement and contained the truth, did it not, whether it was confidential or not? A. Yes.

"Q. It was a truthful statement, wasn't it? A. Yes, as near as I could."

To my mind, the halting and evasive testimony of these witnesses on the critical issue of identity is so thoroughly contradicted and impeached by their cross-examination and by their previous contrary statements that it carries no probative value. Furthermore, and of controlling importance, the circumstances were such that, in my opinion, it was physically impossible for these witnesses to have recognized a name or letters on the side of the offending truck or trailer. Plaintiff and his witnesses were suddenly confronted with an emergency and crowded off the highway by the offending truck. The two vehicles passed at close range, traveling in opposite directions, and it is preposterous to suggest that a person on the bus could or did recognize a word or letters on the side of the offending truck or trailer. The record clearly reveals that this testimony on the issue of identity was an afterthought, concocted to meet the exigencies of a law suit. This effort should not be crowned with success.

Reviewing courts are not bound to accept evidence that is inherently incredible or is plainly opposed to common sense and practical experience in the light of the physical facts involved. Fore v. Southern Ry. Co., 4 Cir., 178 F.2d 349, 351. Evidence contradicted by physical facts is not substantial because it is without probative value. Lovas v. General Motors Corp., 6 Cir., 212 F.2d 805, 808. These and similar principles announced in many cases are applicable in the instant situation. The jury might have believed, this court might believe, that the offending truck was that of defendant, but the point is that there was no substantial proof in support thereof. To hold that plaintiff sustained the burden of proof upon the issue of the identity of the offending truck is to give credence to that which is incredible and I think impossible.