INDEMNITY INS. CO. OF NORTH AMER-
ICA v. KELLAS et al.

No. 4377.

United States Court of Appeals
First Circuit.

March 4, 1949.

As Amended March 8, 1949.

James P. Moriarty, of Springfield, Mass., for appellant.

Alton H. Grauman, of Boston, Mass. (Cohen, Bernkopf, Grauman & Goodman, of Boston, Mass., on the brief), for appellees Ednamarie Kellas and Ruth Kellas.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and PETERS, District Judge.

MAGRUDER, Chief Judge.

Indemnity Insurance Company of North America, a Pennsylvania corporation, appeals from a judgment dismissing its complaint for a declaratory judgment. The

district court was of the view that it had jurisdiction of the complaint under the Federal Declaratory Judgment Act, 48 Stat. 955, now 28 U.S.C.A. § 2201, but declined to exercise such jurisdiction as a matter of discretion. Indemnity Ins. Co. of North America v. Kellas, D.C. 1948, 80 F.Supp. 497.

Prior to the occurrence of a certain automobile accident later to be mentioned, appellant had issued to the named insured, Willys-Overland Motors, Inc., an Ohio corporation, a blanket policy of liability insurance.

Under Insuring Agreements I-A and II-A, appellant agreed to pay on behalf of the insured, within the monetary limits stated in the contract, all sums which the insured should become obligated to pay by reason of tort liability for personal injuries or property damage sustained by any person or persons arising out of "the ownership, maintenance or use of any automobile". In respect of these agreements only, the unqualified word "insured", wherever used in the policy, is defined to include not only the named insured but also any person using an automobile "with the permission of the named insured".

Under Insuring Agreements I-B and II-B, appellant agreed to pay on behalf of the insured, within the monetary limits stated in the contract, all sums which the insured shall become obligated to pay by reason of tort liability for personal injuries or property damage sustained by any person or persons arising out of "all other operations of the insured as defined herein." By a later provision defining such "other operations of the insured", as here used, these operations were defined as covering "the manufacture, distribution, and sale of jeeps and other motor vehicles".

Under Insuring Agreement III, "in addition to the applicable limit of liability of this policy", appellant agreed that, as respects insurance afforded by this policy, it shall "defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent". As the district court construed the policy, we are inclined to think correctly, appellant's additional contractual obligation under Insuring Agreement III to defend suits "against the insured" is applicable only to suits against the named insured, and does not include suits against other persons operating an automobile with the permission of the named insured.[1]

The policy further provided, in condition G, that the "insured" shall cooperate with the insurance company and upon the company's request shall attend hearings, assist in effecting settlements, securing and giving evidence, etc., and upon the company's request "the insured shall give to the company a signed statement of facts containing all available information deemed necessary by the company to determine and define its liability and rights under this policy." Condition H provided that no action shall lie against the company "unless, as a condition precedent thereto, the insured shall have fully complied with all the conditions hereof," nor until the amount of the insured's obligation to pay has been finally determined either by judgment against the insured, after actual trial or by written agreement of the insured, the claimant, and the company. Condition H also provided that any person who has secured such a judgment "shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the insured", and that bankruptcy or insolvency "of the insured shall not relieve the company of any of its obligations hereunder."

The named insured, Willys-Overland, was the manufacturer and owner of a certain Willys station wagon, which it assigned to a field representative, one Alexander W. Kellas, Sr., with full authority as such agent and servant to operate the vehicle. On June 19, 1947, the station

---

[1] Judge Woodbury is inclined to think that the district judge incorrectly construed the policy in this particular. We have not found it necessary to decide the point, because, as shown later in the opinion, there is in any event no present controversy between the parties as to the insurer's duty to defend the suit for damages pending in the state court.

wagon was being operated on the streets of Hartford, Connecticut, by Alexander W. Kellas, Jr., hereinafter referred to as Junior, with his mother, Ruth Kellas, and his sister, Ednamarie Kellas, as passengers therein. The station wagon got out of control and crashed into an electric light pole on the sidewalk, as a result of which collision Ruth and Ednamarie Kellas allegedly received personal injuries.

Subsequently Ruth and Ednamarie filed their complaint in the Superior Court for the County of Hartford, Connecticut, against Willys-Overland Motors, Inc., and against Junior, seeking to recover damages for their respective injuries, which were set forth in separate counts. Since the plaintiffs and Junior, one of the defendants, were all citizens of Massachusetts, this case could not be removed to the federal courts for lack of the requisite diversity of citizenship.

The complaint of Ruth and Ednamarie alleged that the defendant Willys-Overland, owner of the station wagon, had assigned the same "to its employee, as servant and agent, one Alexander W. Kellas, Sr., with full authority to operate said vehicle"; that Kellas Sr., in accordance with the authority granted him by Willys-Overland, had entrusted the station wagon to the defendant Junior, his son, "and authorized him to operate said vehicle"; that the accident, in which the plaintiffs received their bodily injuries as passengers in the station wagon, was attributable to various negligent acts and omissions of Junior in operating the vehicle. Paragraph 6 of the complaint alleged that the said collision was "also caused as a result of the negligence of the defendant, Willys Overland Motors, Incorporated, in that the station wagon which it manufactured was defective in that it was improperly, unskillfully and negligently constructed and inspected, endangering the safety and lives of the oc-

cupants of said vehicle." [2] The damages claimed were $15,000 for Ruth and $20,000 for Ednamarie.

On February 28, 1948, a joint answer to the complaint in the tort action was filed on behalf of the defendants.[3] The answer admitted that Willys-Overland had entrusted the station wagon to Kellas Sr. with full authority to operate said vehicle; but denied the allegation that Kellas Sr., in accordance with such authority, had entrusted the vehicle to Junior and authorized him to operate it. The answer also denied the various allegations of negligence both on the part of Junior and of Willys-Overland. As a second defense, the answer alleged that Junior was in an unfit physical condition to have operated the vehicle, which the plaintiffs knew or should have known, and therefore they assumed the risk of injury. As a third defense, the answer set up contributory negligence of the plaintiffs in accepting a ride in the station wagon knowing that Junior was in no proper condition to operate the same. On March 4, 1948, the plaintiffs filed a replication denying the allegations contained in these special defenses.

On March 23, 1948, the plaintiffs filed an amendment to their complaint so as to allege that Kellas Sr. was entrusted with the station wagon not only with authority to operate it but also with authority to "entrust others with the operation thereof, particularly his son, the defendant, Alexander W. Kellas, Jr." Also, the complaint was amended so as to allege that Kellas Sr., in accordance with the authority granted him by Willys-Overland, had entrusted the station wagon to Junior and had authorized him to operate said vehicle "as servant and agent of the defendant, Willys Overland Motors, Incorporated." What answer, if any, has been filed to these amended allegations of the complaint does not appear.

---

[2] Cf. MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, Ann.Cas.1916C, 440; Johnson v. H. M. Bullard Co., 1920, 95 Conn. 251, 111 A. 70, 12 A.L.R. 766; Am.L.Inst. Restatement of Torts, § 406.

[3] In its brief appellant insurance company states that it entered an appearance for Junior, and filed the answer "under a full reservation of rights", lest a default judgment be entered or a poor or inadequate defense be set forth on behalf of Junior.

Meanwhile, on March 11, 1948, the insurance company filed the present complaint for a declaratory judgment. Joined as defendants were Willys-Overland, the named insured, Junior, Ruth and Ednamarie. The complaint set forth the issuance of the liability insurance policy aforesaid, the happening of the accident aforesaid while the motor vehicle owned by Willys-Overland was being driven by Junior, and the pendency in the Connecticut state court of the damage suit brought by Ruth and Ednamarie against Willys-Overland and Junior. The complaint alleged that at the time of the accident the automobile was being operated by Junior without the knowledge, consent or permission, express or implied, of Willys-Overland, and was not upon any business on its behalf; that by reason of such fact the insurance company would be under no obligation under the terms of the policy "to defend said action upon behalf of the said Alexander W. Kellas, Jr. or to pay any judgment rendered against him or against Willys-Overland Motors, Incorporated." Furthermore, the complaint alleged that Junior, Ruth and Ednamarie have claimed that, under the terms of the insurance policy, the plaintiff is obligated to pay any judgments against Junior or Willys-Overland which may be rendered in the pending damage suit, "which liability this plaintiff denies." In addition to denying that Junior was an "insured" within the terms of the policy, the plaintiff further alleged that if Junior was such an "insured" he has violated condition F of the policy requiring him to give notice of the accident, and condition G requiring him to cooperate with the insurance company in the furnishing of information needed for the preparation of his defense. The prayer of the complaint was that the court enter judgment declaring (a) that Junior was not operating the automobile with the consent, permission, or knowledge of Willys-Overland; (b) that Junior had violated conditions F and G of the policy, "and is therefore not entitled to the indemnity and protection afforded by said policy"; (c) that the insurance company is under no obligation to defend the pending damage suit on behalf of Junior; (d) that the plaintiff is under no obligation to assume any liability for the acts of Junior at the time and place of the collision; and (e) that the damages resulting from the collision were not covered by the policy.

Defendant Willys-Overland filed an answer to the declaratory judgment complaint, admitting that Junior was operating the automobile at the time of the accident without its knowledge, consent or permission, express or implied, and not upon any business of Willys-Overland; and joining with the plaintiff in the prayer that the court enter judgment declaring that Junior was not operating the automobile with the consent, permission or knowledge of Willys-Overland, and that no liability attached to Willys-Overland by reason of the operation of the automobile by Junior at the time of the accident.

Junior filed no answer, and apparently has defaulted. Defendants Ruth and Ednamarie filed a motion to dismiss the complaint because of lack of jurisdiction of the court over the subject matter and because the complaint failed to state a claim upon which relief could be granted. The opinion of the district court upon the motion to dismiss concluded that the complaint should be dismissed as a matter of discretion, not only against the moving defendants but against all defendants. The insurance company has taken this appeal from the ensuing judgment of dismissal.

██ It may be questioned whether there exists any "actual controversy" between the parties sufficient to confer jurisdiction upon the district court. The statutory provision limiting declaratory judgments to "cases of actual controversy" is no more than a recognition that the federal judicial power extends only to "cases" or "controversies" in the constitutional sense. Aetna Life Ins. Co. v. Haworth, 1937, 300 U.S. 227, 239–240, 57 S.Ct. 461, 463, 81 L.Ed. 617, 108 A.L.R. 1000. The distinction is between a case "appropriate for judicial determination", on the one hand, and a "difference or dispute of a hypothetical or abstract character", on the other —a distinction which "is necessarily one of degree," as the Court pointed out in Maryland Casualty Co. v. Pacific Coal & Oil

Co., 1941, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826.

Is there enough of an "actual controversy" between the insurance company and the tort-claimants Ruth and Ednamarie to sustain the jurisdiction of the federal court on that basis alone? The tort-claimants have alleged in their action for damages that Junior was the authorized agent of Willys-Overland, operating the automobile with Willys-Overland's consent and permission. If these facts are eventually established in the state court action, and if the tort-claimants prove their allegations of negligence, overcome the special defenses set up, and obtain judgments against Junior and Willys-Overland, then it may be that some time in the future Ruth and Ednamarie will make a claim against the insurance company to satisfy their judgments. Even this is speculative, because if the tort-claimants get a judgment against Willys-Overland they will probably be able to obtain satisfaction of the judgment without recourse to the insurance company, since Willys-Overland is amply solvent, as is conceded. The most that can be said is that, as between the insurance company and the tort-claimants, there now exist the makings of a potential controversy in the future.

To test the point, take a simple case: A, the named insured in an automobile liability policy, runs into and injures B. B sues A for damages in a state court, alleging negligence. There is no controversy between A and the insurer as to coverage, nor as to the insurer's contractual obligation to defend; it is admitted, in other words, that the tort liability which B is asserting is one for which the insurer has agreed to indemnify A, and that the insurer is obligated to defend such suits on behalf of A, the insured. The insurer files a complaint under the Federal Declaratory Judgment Act against A and B, seeking a judgment declaring that A was not negligent in causing the accident and therefore that A was under no tort liability for which the insurer had agreed to indemnify A. Assuming diversity of citizenship as between the insurer and B, and assuming further that diversity of citizenship is not removed by realigning A as a party-plaintiff (as would have to be done, State Farm Mutual Automobile Ins. Co. v. Hugee, 4 Cir., 1940, 115 F.2d 298, 132 A.L.R. 188), would the federal court have jurisdiction of the complaint for a declaratory judgment? It would seem not, for lack of an "actual controversy" between the insurance company and B, it not being enough that there is the possibility of a future controversy between them in certain contingencies. And certainly no court would give a declaratory judgment in such a case even if it had jurisdiction.

Where an insured is being sued by a tort-claimant, and there is a genuine controversy between the insurer and the insured as to whether the tort liability thus being asserted is of a type covered by the contract of indemnity, and whether therefore the insurer is under an immediate contractual obligation to defend the suit on behalf of the insured, it has been held that a federal court may entertain a complaint by the insurer for a declaratory judgment, naming the insured and the tort-claimant as defendants. Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; Maryland Casualty Co. v. United Corp., 1 Cir., 1940, 111 F.2d 443. But this is not to say that there was a controversy between the insurer and the tort-claimant of "sufficient immediacy" so that the court would, on the basis of that controversy alone, have jurisdiction to give a declaratory judgment. Perhaps it would be more accurate to base the jurisdiction of the court, in this type of case, on the actual and immediate controversy between the insurer and the insured, the tort-claimant being joined as a necessary and proper party in order that the court may be enabled to give more complete relief. Maryland Casualty Co. v. Consumers Finance Service, Inc., 3 Cir., 1938, 101 F.2d 514, 515; Central Surety & Ins. Corp. v. Caswell, 5 Cir., 1937, 91 F.2d 607, 609. See State Farm Mutual Automobile Ins. Co. v. Hugee, 4 Cir., 1940, 115 F.2d 298, 302, 132 A.L.R. 188. It is obviously desirable that the tort-claimant should be concluded by the declaration of noncoverage; otherwise he would be free to litigate this same issue in a subsequent proceeding which he,

if successful in obtaining judgment against the insured, might bring against the insurance company. This seems to be the rationale of the decision in Maryland Casualty Co. v. Pacific Coal & Oil 'Co., supra, 312 U.S. at page 274, 61 S.Ct. 510, 85 L.Ed. 826, though the court does say that an "actual controversy" subsisted between the insurer and the tort-claimant.

Coming back, then, to the facts of the case at bar, was the jurisdiction of the court below sustained by the presence of an "actual controversy" between the plaintiff insurer and the insured?

■ It is not suggested that there is any controversy at all between the insurer and the named insured, Willys-Overland. They are in agreement that the tort claim asserted against Willys-Overland is covered by the insurance policy, and that the insurer is obligated to defend Willys-Overland in the pending action for damages. They are also in agreement in claiming that Junior was operating the car without the consent or permission of the named insured, and therefore that Willys-Overland is not legally liable for the negligent acts of Junior, and that Junior is not an "insured" within the meaning of the policy.

Nor is it easy to see just what "actual controversy" there is between the insurer and Junior. In the pending tort action, Junior has allowed an answer to be filed in his name, jointly with that of his codefendant Willys-Overland, denying that Kellas Sr., in accordance with authority granted him by Willys-Overland, had entrusted the vehicle to Junior with authority to operate the same. This is equivalent to an assertion that Junior was operating the car without the permission of the named insured, and therefore that Junior was not an "insured" within the meaning of the policy, which is one of the very declarations which the insurer is seeking in the present complaint for a declaratory judgment. Notwithstanding this, the insurer insists that a controversy between it and Junior must stand as admitted, on account of Junior's default and failure to answer the declaratory judgment complaint, which alleges that Junior has claimed to be an "insured" within the meaning of the policy,

and has claimed that the insurance company is obligated to indemnify him on account of any judgment that may be obtained against him by Ruth and Ednamarie. For a person who is supposed to be engaged in an "actual controversy" with the insurance company, Junior is indeed a remarkably inert controversialist. Furthermore, this controversy—such at it is—hardly is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., supra, 312 U.S. at page 273, 61 S.Ct. at page 512, 85 L.Ed. 826. So far as appears, Junior has made no claim that the insurance company has a duty to defend him in the pending tort action; he seems quite content, in view of the family relationship of the parties, to let the action go undefended. As stated earlier in this opinion, under the terms of the policy as construed by the district court, the insurer's contractual obligation to defend extends only to the named insured. However, since the insurance company is under the undoubted duty to defend Willys-Overland in the pending damage action, it is as a practical matter under the necessity of defending also Junior, the codefendant, even in the absence of a legal obligation to do so, because of the interrelation of the issues bearing on the respective liabilities of Willys-Overland and Junior. Thus, in view of the possibility that the jury might conclude that Junior was operating the car as the authorized agent of Willys-Overland, notwithstanding the latter's assertion to the contrary, it might be necessary to establish that, under the circumstances of the accident, Junior was not liable to the tort-claimants, in order to save Willys-Overland from an adverse judgment based upon respondeat superior. But still there is no controversy between the insurer and Junior as to the existence of a present *legal* duty on the part of the insurer to defend Junior in the pending tort action. At best, the controversy between the insurer and Junior is a potential one; that is, taking the allegation of the declaratory judgment complaint at its face value, Junior may have served notice upon the insurer that if judgment goes against him in the tort action he will assert a claim

against it for indemnity under the terms of the policy.

All in all, if the district court had technical jurisdiction to give a declaratory judgment upon the present complaint, it must be said that the "actual controversy" between the plaintiff insurer and the defendants is just about the most anemic sort of controversy that might be imagined as satisfying the minimum requirements of jurisdiction.[4] The district court gave the plaintiff the benefit of the doubt as to the existence of jurisdiction, and dismissed the complaint as a matter of discretion. Since we are clearly of opinion that the judgment of the district court dismissing the complaint must be affirmed, even considering it as a matter of discretion, we need not decide the point as to jurisdiction.

It is settled that a federal court having jurisdiction of a complaint under the Federal Declaratory Judgment Act may, in appropriate circumstances, decline to exercise such jurisdiction as a matter of sound judicial discretion. Brillhart v. Excess Ins. Co., 1942, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Eccles v. Peoples Bank, 1948, 333 U.S. 426, 431, 68 S.Ct. 641.

In Maryland Casualty Co. v. United Corp., 1 Cir., 1940, 111 F.2d 443, upon which appellant heavily relies, the case for the exercise of jurisdiction to give a declaratory judgment was, we thought, compelling. The tort-claimant, owner of an apartment building, had brought an action against the insured for negligence in filling an oil tank in the apartment house and in so repairing the tank and pipes that oil continued to leak therefrom, resulting in an explosion and a fire. The insured made demand upon the insurance company to defend the action in its entirety and to indemnify the insured against any adverse judgment. The policy covered liability of the insured for bodily injuries or property damage arising out of the ownership or operation of certain specified motor vehicles, and also for property damage resulting from "the loading or unloading of merchandise carried on any such motor vehicle". It was the contention of the insurer that the liability asserted against insured in the tort action was not of a kind for which the insurer had promised indemnity, and therefore that the insurer was not obligated to defend the insured in the tort action. These contentions, which were the only ones the insurer sought to have adjudicated in its complaint for a declaratory judgment, were not in issue in the pending action for damages. If the insurer should prevail in the suit for declaratory judgment, it would be enabled to bow completely out of the tort action, which it would have no obligation to defend, because of noncoverage, and with the outcome of which it would have no concern because, even if judgment therein should go against the insured, the latter would not be entitled to indemnity from the insurer. Under these circumstances we held that the application of the insurer for a declaratory judgment could not be denied as a matter of discretion.

In the case at bar, by way of contrast, there is no dispute between the parties to the insurance contract as to the proper interpretation of the provisions for coverage. It is conceded that, under the allegations of the complaint as amended in the tort action, the liabilities asserted against Willys-Overland and Junior are of the

---

4 There is, of course, a real and active controversy between Willys-Overland and the tort-claimants, involving the asserted liability of Willys-Overland for the negligence of Junior. Perhaps it might be suggested that the existence of this controversy sustained the jurisdiction of the court below by reason of the fact that Willys-Overland, though it did not join as plaintiff in the declaratory judgment complaint filed by the insurer, did, by its answer thereto, join in the prayer of the complaint that the court enter judgment declaring that Junior was not operating the automobile with the permission of Willys-Overland and that no liability attached to Willys-Overland by reason of the operation of the automobile by Junior at the time of the accident. But if this suggestion is technically sound, the district court was certainly warranted as a matter of discretion in declining to sanction the piecemeal trial of issues raised in the pending suit for damages. See Brillhart v. Excess Ins. Co., 1942, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620; American Fidelity & Casualty Co., Inc., v. Service Oil Co., Inc., 4 Cir., 1947, 164 F.2d 478, and cases cited.

type covered by the insurance policy. There is no controversy between the parties as to the present duty of the insurer to defend the tort action. Admittedly it has such duty to defend the named insured Willys-Overland. As has been stated, though it is apparently under no contractual duty to defend Junior, and Junior has never, so far as appears, claimed that it had, yet the insurer has recognized the necessity of defending Junior as an incident of its duty to defend Willys-Overland.

There is one issue now sought to be adjudicated which cannot be disposed of in the pending tort action, and a declaration upon which by the federal court would not affect the outcome of the tort action, namely, whether Junior, though he be assumed otherwise to be an "insured" within the meaning of the policy, has disabled himself from claiming indemnity under the policy by reason of his failure to comply with policy conditions with reference to the furnishing of information to the insurer, etc. But this is a very minor issue, decision of which could well be deferred until the happening of the one contingency in which it might become crucial, that is, judgment in the state court in favor of Willys-Overland and against Junior, followed by a proceeding by Junior, or by his judgment creditors, for indemnity under the policy. The decision of this issue now by the federal court would not relieve the insurance company of its contractual obligation to defend Willys-Overland in the state court action, both on the issue of Willys-Overland's liability for Junior's negligence, if any, and on the issue of Willys-Overland's liability as manufacturer on the MacPherson v. Buick Motor Co. doctrine. Junior's alleged breach of conditions is obviously not what the insurer is mainly interested in at this time. The presentation of this one issue does not make mandatory the giving of a declaratory judgment. We have never laid down the inflexible proposition that, regardless of any other circumstances, it would always be deemed an abuse of discretion to dismiss an insurer's complaint for a declaratory judgment, if such complaint presents a controversy as to some issue that cannot be determined in a pending tort action against the insured.

The insurer's main concern in the present suit is to obtain a declaration that Junior, on the occasion in question, was using the car without the knowledge or permission of Willys-Overland, and therefore was not an "insured" whose liability the insurer was obligated to assume. This issue of permission or lack of permission is strictly not an issue in the pending tort action. It has no bearing, of course, upon Junior's liability for his own negligence. As to the liability of Willys-Overland for Junior's negligence, Connecticut recognizes and applies "the general principle that one who permits another to use his car does not thereby become liable for the negligent conduct of that other, unless in driving it he is pursuing an agency or employment for the owner." Durso v. A. D. Cozzolino, Inc., 1941, 128 Conn. 24, 29, 20 A.2d 392, 394. Accord, Whiteman v. Al's Tire and Service Garage, Inc., 1932, 115 Conn. 379, 382, 161 A. 519.[5] Therefore, if the tort action should result in verdict and judgment for Willys-Overland, but against Junior, this would not necessarily be a determination that Junior was using the car without Willys-Overland's permission. Junior might have been driving on his own business as an authorized bailee of Willys-Overland (derivatively, through authority delegated by Willys-Overland to Kellas Sr.); in which case Junior would be an "insured" within the meaning of the policy, but Willys-Overland would not be liable for Junior's negligence.

Why, therefore, is the insurance company not content to wait and contest the issue of permission if and when judgment in the state court goes in favor of Willys-Overland and against Junior, and a subse-

---

[5] A statutory exception to this general principle is found in Conn. Gen. Stat. 1949, § 2479, which reads: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner." See Marshall v. Fenton, 1928, 107 Conn. 728, 731, 142 A. 403.

quent proceeding is brought by Junior, or by his judgment creditors, for indemnity under the policy? That contingency may never occur. If, for example, judgment in the tort action should go in favor of Junior because of a finding by the jury that Junior was not negligent, or because of a finding of contributory negligence, then in that event it becomes wholly immaterial whether Junior was operating the car with Willys-Overland's permission or not.

It is not difficult to guess the reason why the insurance company is so anxious now "to get two trials where one grew before", to use the phrase of the district judge. Section 7905, Conn.Gen.Stat.1949, contains the following provision: "In any civil action brought against the owner of a motor vehicle to recover damages for the negligent or reckless operation of such motor vehicle, the operator, if he be other than the owner of such motor vehicle, shall be presumed to be the agent and servant of the owner of such motor vehicle and operating the same in the course of his employment, and the defendant shall have the burden of rebutting such presumption." Whether Junior was operating the car as the agent and servant of Willys-Overland, within the scope of his employment, is therefore unavoidably a jury issue in the pending tort action, even though the tort plaintiffs may offer no evidence on that issue. As stated in Lockwood v. Helfant, 1940, 126 Conn. 584, 587, 13 A.2d 136, 137: "The presumption raised by the statute is not one which is rebutted by the mere offer of substantial countervailing evidence. * * * The jury were not obliged to accept the testimony offered by the defendant on the question of agency." It may therefore be deemed by the insurance company to be strategically advantageous to gamble on having this issue withdrawn from the jury in the state court by the device of applying to a federal court for a declaratory judgment. Cf. Borchard, Declaratory Judgments (2d ed.) p. 399 et seq. Though, as explained above, the question whether Junior was operating the car with the permission of Willys-Overland is, not, as such, an issue, in the pending tort action, it is nevertheless a more inclusive issue, the determination of which now in the insurer's favor would lift out of the hands of the jury in the tort action the determination of Willys-Overland's liability on the basis of respondeat superior. This is so, because a finding by the federal court that Junior was operating the car without Willys-Overland's permission would exclude the hypothesis that Junior was operating the car as authorized agent and servant of Willys-Overland within the scope of his employment; and the ensuing declaratory judgment as requested by the insurer in its complaint and by Willys-Overland in its answer thereto would be res judicata on this most important issue pending for determination in the state court action.

Under the circumstances here present, no useful purpose would be served by entertaining the complaint for a declaratory judgment. Upon the contrary, there are sound reasons of policy for not doing so. See the discussion in the opinion of the district court, 80 F.Supp. at pages 500-501. See also 51 Yale L.J. 511, 515. What was said in Indemnity Ins. Co. v. Schriefer, 4 Cir., 1944, 142 F.2d 851, 854, is applicable here: "This is but another one of the cases in which a liability insurance company has sought to drag into the federal court the trial of non-removable local litigation." It is a use of the declaratory judgment procedure which ought to be discouraged.

The judgment of the District Court is affirmed.