Edward **ZWETCHKENBAUM** and **Gussie Kaplan**

v.

**OPERATIONS, INC.**

Civ. A. No. 2067.

United States District Court
D. Rhode Island.

Aug. 25, 1958.

**450**

William R. Goldberg, Pawtucket, R. I., for plaintiffs. Edward F. Hindle, Providence, R. I., for intervenors.

Hoyt W. Lark, Providence, R. I., for defendant.

DAY, District Judge.

In this action the plaintiffs, citizens of Massachusetts, seek a declaratory judgment against the defendant, a corporation organized under the laws of the State of Rhode Island. Jurisdiction is based upon diversity of citizenship and the existence of a controversy in the requisite amount. The declaratory judgment is sought pursuant to the provisions of Title 28 U.S.C.A. § 2201.

Subsequent to the filing of the defendant's answer, Harry R. Davis, Phillip F. Coe and Bradley B. Gilman, Trustees of the R. C. Taylor Trust, all citizens of Massachusetts, moved for leave to intervene as parties plaintiff under Rule 24, F.R.C.P., 28 U.S.C.A. No objection to their motion was made by either of the original parties and they were allowed to intervene.

The case was tried on an agreed statement of facts signed by the intervenors, the plaintiffs and the defendant. The facts as stipulated may be briefly summarized as follows: on or about May 28, 1948, the intervenors, as trustees, leased to the plaintiffs and one Pincus Zwetchkenbaum certain premises located at 32–42 Broad Street in Pawtucket, Rhode Island, for a term of years commencing on July 15, 1950 and ending on May 31, 1972; said lease contains in part the following provisions:

"Article V

"The said Lessee and the Lessee's respective successors, heirs, executors, administrators, and assigns, covenant and promise with and to the said Lessor and its successors and assigns, during said term and for such further time as the said Lessee, or any other person or persons claiming under the Lessee, shall hold the said premises or any part thereof;

"(3) To pay to the Lessor monthly all charges for water used for general purposes on the demised premises, according to meter readings. If at any time during the term of this Lease the Lessee should install air-conditioning equipment, a suitable meter to register the water consumed shall also be installed by the Lessee, and Lessee shall pay to the Lessor the water bills as rendered for same. * * *

"(4) To pay all charges for electricity used on said premises; also for gas used on said premises, and any other utility services;

"(8) To save said Lessor and its successors and assigns harmless from all loss or damage occasioned by the use, misuse, or abuse of the city water, or bursting of the pipes; and to save the Lessor and its successors and assigns harmless and indemnified from and against all loss, liability or expense that may be incurred by reason of any accident with the machinery, heating apparatus and equipment, hatchways, signs, awnings, elevator, gas, electricity, water, or other pipes, coalholes or covers, or from not removing snow and ice from the sidewalks, or from any other accidents;

"(13) In case the taxes assessed by the City of Pawtucket for any year during the term of this Lease, upon the building of which the leased premises are a part or upon the land upon which the building stands, or upon both, are in excess of the taxes assessed upon the property for the tax year ending nearest the date of possession, either because of an increase in the tax rate or an increase in the valuation or both, then the said Lessee does further promise and covenant to pay as further rent in addition to that hereinbefore specified, fifty percent (50%) of the amount of said increase, in case the Lessee occupies the premises for the whole of such tax year, or a proportionate part of said 50% in case the Lessee occupies the premises only a fractional part of such tax year. Said increased rent shall be payable on the next rent day after the said tax notices are sent to the Lessor and a bill rendered by the Lessor to the Lessee."

The plaintiffs are also the devisees of the interest of said Pincus Swetchkenbaum in said lease, he having died testate prior to the commencement of this action; on or about July 14, 1950, he and the plaintiffs entered into a sub-lease with Providence Public Market Company, a Massachusetts corporation, of a portion of the premises demised to them; this sub-lease is for a term of ten years beginning July 15, 1950 and ending July 15, 1960, with certain renewals at the option of the sub-lessee and contains in part the following:

"Article V

"The said Lessee and the Lessee's respective successors, heirs, executors, administrators, and assigns, covenant and promise with and to the said Lessor and its successors and assigns, during said term and for such further time as the said Lessee, or any other person or persons claiming under the Lessee, shall hold the said premises or any part thereof:

"(3) To pay to the Lessor monthly all charges for water used for general purposes on the demised premises, according to meter readings. If at any time during the term of this Lease the Lessee should install air-condition equipment, a suitable meter to register the water consumed shall also be installed by the Lessee, and the Lessee shall pay to the Lessor the water bills as rendered for same. * * *

"(4) To pay all charges for electricity used on said premises; also for gas used on said premises, and any other utility services;

"(8) To save said Lessor and its successors and assigns harmless from all loss or damage occasioned by the use, misuse, or abuse of the city water, or bursting of the pipes; and to save the Lessor and its successors and assigns harmless and indemnified from and against all loss, liability, or expense that may be incurred by reason of any accident with the machinery, heating apparatus and equipment, hatchways, signs, awnings, elevator, gas, electricity, water, or other pipes, coalholes, or covers, or from not removing snow and ice from the sidewalks, or from any other accidents;

"(14) In case the taxes assessed by the City of Pawtucket for any year during the term of this lease, upon the building of which the leased premises are a part or upon the land upon which the building stands, or upon both, are in excess of the taxes assessed upon the property for the tax year ending nearest the date of possession, either because of an increase in the tax rate or an increase in the valuation or both, then the said Lessee does further promise and covenant to pay as further rent in addition to that hereinbefore specified, fifty percent (50%) of the amount of said increase to the extent of the Lessee's proportion of the premises, in case the Lessee occupies the premises for the whole of such tax year, or a proportionate part of said 50% in case the Lessee occupies the premises only a fractional part of such tax year. Said increased rent shall be payable on the next rent day after the said tax notices are sent to the Lessor and a bill rendered by the Lessor to the Lessee;

"(XII) With reference to Paragraph 14 of Article V of this lease, it is hereby clarified so that in the event of an increase in taxes as therein set forth, the Lessee agrees to pay a sum equivalent to one-half of the said increase multiplied by the proportion that the possession of the Lessee (51) bears to the total of the premises demised to the Lessor herein by the Trustees of the R. C. Taylor Trust (76), so that the formula shall be as follows: one-half of the increase multiplied by $51/76$."

Said sub-lease also contains the following provision:

"Memorandum supplementary to lease by Pincus Zwetchkenbaum, Edward Zwetchkenbaum, and Gussie Kaplan to Providence Public Market Company of premises on Broad Street, Pawtucket, Rhode Island, this Memorandum being executed simultaneous with the execution of the aforesaid lease.

"1. Paragraph 14 of Article V of said lease is hereby clarified so that in the event of an increase in taxes as therein set forth, the Lessee agrees to pay a sum equivalent to one-half of the said increase multiplied by the proportion that the possession of the Lessee (40) bears to the total of the premises demised to the Lessor herein by the Trustees of the R. C. Taylor Trust (76), so that the formula shall be as follows: one-half of the increase multiplied by $40/76$."

On or about January 13, 1953, this sub-lease was assigned by Providence Public Market Company to the defendant which assumed and agreed to pay the rental provided therein and to faithfully perform and keep all the covenants, terms and conditions contained in said sub-lease; since the execution of the plaintiffs' lease the City of Pawtucket has made certain tax assessments against the premises demised to the plaintiffs.

Intervenors paid the amounts of these assessments when due, less a discount for prompt payment, and thereafter the plaintiffs, upon the demand of intervenors, paid to them 50% of the amount by which the taxes assessed as of December 31, 1951, December 31, 1952 and December 31, 1953, exceeded the amount of the taxes assessed as of December 31, 1950, but have refused to pay any of the increase in the taxes assessed as of December 31, 1954 and as of December 31, 1955, over said amount assessed as of December 31, 1950.

Plaintiffs demanded a proportional contribution of the increases in the amount of said taxes assessed as aforesaid from the defendant but the defendant has refused to pay the same, contending there has been no increase in said taxes within the meaning of paragraph 14 of Article V of said sub-lease; subsequent to the execution of said lease and sub-lease, the Blackstone Valley Sewer District began to make and has made annual charges against the

real estate demised to the plaintiffs for the use of the Blackstone Valley Sewer project; upon demand, plaintiffs reimbursed intervenors for 50% of these charges levied for the twelve months periods ending August 31, 1953 and August 31, 1954, but have refused to reimburse them for any larger percentage thereof and for any portion of the charges levied for periods ending August 31, 1955 and August 31, 1956; defendant has also refused to pay plaintiffs any part or all of these annual charges contending that it is not obligated to do so under said sub-lease.

Plaintiffs seek a construction of the provisions of Article V of the sub-lease set forth above and a determination as to whether there has been an increase in taxes within the meaning of said sub-lease so as to increase the rent reserved therein and a determination as to whether or not the defendant is liable under said sub-lease for any part of said sewer service charges. In addition, they ask for the entry of an order directing the defendant to pay the expenses, including reasonable attorneys' fees, incurred by them in instituting this action.

Intervenors seek a construction of the provisions of Article V of their lease and a determination whether or not there has been an increase in taxes within the meaning of said lease and whether or not the plaintiffs are liable to them for said sewer service charges. And, in addition, they pray for the entry of an order directing the plaintiffs or the defendant to pay the expenses, including reasonable attorneys' fees, incurred by them in instituting this action.

As ground for the relief sought by them plaintiffs assert that the questions presented by them for determination are of merit and that it would work a hardship on both the plaintiffs and the defendant if plaintiffs were to pursue some other remedy. However, it may be noted that the record is barren of evidence as to any such alleged hardship.

Intervenors contend that they should be granted the relief sought by them because the proper interpretation of the provisions of said lease involve substantial questions as to the legal rights of the parties to this action throughout the balance of the terms of the lease and sub-lease.

The Declaratory Judgments Act authorizes federal courts to grant declaratory relief only in a case of actual controversy. Indemnity Ins. Co. of North America v. Kellas, 1 Cir., 1949, 173 F.2d 120, 123. And even though there is a "case" or "controversy" in the constitutional sense, over which Congress has given jurisdiction, there is no compulsion to exercise that jurisdiction. Brillhart v. Excess Ins. Co., 1942, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Lizza & Sons, Inc., v. Hartford Accident & Indemnity Co., 1 Cir., 1957, 247 F.2d 262, certiorari denied 355 U.S. 906, 78 S. Ct. 332, 2 L.Ed.2d 261. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion * * *." Eccles v. Peoples Bank, 1948, 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784.

It is well settled law that in determining whether declaratory relief shall be given "the actuality of the plaintiff's need for a declaration of his rights is * * * of decisive importance". Eccles v. Peoples Bank, supra. "Whether declaratory relief is appropriate in any particular case is an inquiry 'which every grant of this remedy must survive.' Public Service Commission Of Utah v. Wycoff Co., 1952, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 * * *." Lizza & Sons, Inc., v. Hartford Accident & Indemnity Co., supra [247 F.2d 264].

In the present case there can be no dispute as to the availability of another remedy to the plaintiffs in either the Courts of Rhode Island or in this Court. They can have resort to an action to recover the amounts claimed to be due from the defendant under the provisions of the sub-lease as interpreted by them. Cf. Sheldon v. Hamilton, 1900, 22 R.I. 230, 47 A. 316. The judgment

in such action would not only determine the liability of the defendant with respect to any amounts claimed by the plaintiffs to be due and owing under the terms of the sub-lease at the time of the institution of said action, but would result in a final and conclusive interpretation of the terms of said sub-lease as between them.

■ While it is true that the existence of another adequate remedy is not conclusive against the grant of declaratory relief under Title 28 U.S.C.A. § 2201 and Rule 57, F.R.C.P., the character and availability of a coordinate remedy or remedies are factors to be weighed in considering whether declaratory relief should be given. As stated by Judge Parker in Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 1937, 92 F.2d 321, 324, " * * * The object of the statute is to afford a new form of relief where needed." In Maryland Casualty Co. v. Boyle Construction Co., Inc., 4 Cir., 1941, 123 F.2d 558, where plaintiff sought a declaratory judgment concerning matters normally within the cognizance of an administrative tribunal, the Court of Appeals, in upholding the denial of the relief sought, said at page 562:

> "This is not to say that the declaratory jurisdiction is defeated because there is another remedy available * * * It is merely to hold that the court is vested with a sound discretion with respect to the granting of declaratory relief, and that the discretion not to grant it is soundly exercised where it appears that such relief will serve no useful purpose * * *."

To the same effect, see Brillhart v. Excess Ins. Co., supra; Indemnity Insurance Co. of North America v. Kellas, supra.

■ Conversely, where it appears that there is need for such relief to settle all the issues between the parties and that a useful purpose will be served by its grant, an application for such relief cannot be denied as a matter of discretion. Maryland Casualty Co. v. United Corporation of Massachusetts, 1 Cir., 1940, 111 F.2d 443.

In the instant case there has been no showing that an action by the plaintiffs to recover the sums claimed to be due and owing to them by the defendant under the terms of the sub-lease would not afford them adequate relief. Nor is there any showing that all the issues between them could not be determined therein. Likewise, there is no showing that the institution and prosecution of such an action would be unduly burdensome upon them or involve delays which would be prejudicial to their rights. Cf. Western Electric Co. v. Hammond, 1 Cir., 1943, 135 F.2d 283.

In the absence of such special circumstances I am of the opinion that the plaintiffs are not entitled to the declaratory relief which they seek. The plaintiffs' complaint is denied and dismissed.

■ Where jurisdiction of an action is based upon diversity of citizenship, as here, dismissal of the action requires dismissal of an intervenor's complaint if no independent ground of federal jurisdiction exists. See Hunt Tool Co. v. Moore, 5 Cir., 1954, 212 F.2d 685, 688.

Since no question of federal law is involved in this action and since the intervenors and plaintiffs are citizens of the same state, it follows that this Court is without jurisdiction to hear and determine any controversy between them. Accordingly, the intervenors' complaint must be and it hereby is dismissed for want of jurisdiction.

Judgment shall be entered dismissing the plaintiffs' and the intervenors' complaints.