Harry L. **KOZOL**, Plaintiff,

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY**, Defendant.

Civ. A. No. 57–519–C.

United States District Court
D. Massachusetts.

Feb. 1, 1962.

———◆———

Joseph Ford, Thomas W. Wiley, Bingham, Dana & Gould, Boston, Mass., for plaintiff.

David H. Fulton, Boston, Mass., for defendant.

CAFFREY, District Judge.

This is a petition for a declaratory judgment. Jurisdiction of this Court is invoked on the basis of diversity of citizenship of the parties and the requisite jurisdictional amount. The plaintiff, Harry L. Kozol, is a resident of Newton, Massachusetts, and at all material times is and was a doctor of medicine duly licensed and actively engaged in the practice thereof. He is a member of the Massachusetts Medical Society. The defendant, Lumbermens Mutual Casualty Company, an Illinois corporation, is engaged in the insurance business and issues accident and disability policies and other contracts of insurance in the Commonwealth of Massachusetts.

In 1954 the defendant entered into a number of separate contracts of insurance, commonly called "Professional Disability Policies," with various practicing physicians, including plaintiff, all of whom were members of the Massachusetts Medical Society. These policies were written for an initial period of six months and pages 1 and 4 thereof bore, in conspicuous capital letters, the words: "This Policy is renewable at the option of the Company only * * *"

On January 14, 1954, the defendant issued a Professional Disability Policy to the plaintiff. Thereafter, until November 1956, plaintiff paid and defendant accepted renewal premiums with respect to said contract of insurance, in the amount of $125.25 semi-annually. On or about October 1956, defendant tendered to plaintiff a document captioned "Indemnity and Premium Amendment Rider" and requested plaintiff to execute same so that effective on or about December 1, 1956, the sickness and indemnity payments, which under the policy as originally issued would continue up to a maximum period of 364 weeks, would be reduced by the rider to 156 weeks, and the renewal premium would be reduced by the rider to $115.00 semi-annually. Plaintiff declined to execute the rider and thereafter, on December 1, 1956 and June 1, 1957, tendered to defendant the amount of $125.25, seeking additional renewals of the policy as originally written. The defendant refused, and still refuses, to accept said renewal premiums or to renew the policy as originally written.

The plaintiff contends that the defendant had no right to cancel or amend the policy of insurance by unilateral action and in support of this contention relies on a "Renewal Agreement," a copy of which is appended to the complaint as Exhibit A. Plaintiff particularly relies on clause (e) thereof which provides:

"When the Company declines to renew all such policies issued to members of the Massachusetts Medical Society, after giving written notice of its intention at least sixty days prior to the renewal date; (This means the Company can never cancel an individual's policy without canceling the entire group all at one time.)"

The defendant's answer sets up the defense that the Renewal Agreement is not a part of the policy and that the pol-

icy is renewable only at the option of the Company and not by mere payment of a renewal premium. The defendant likewise contends that this is not a proper case for the granting of the discretionary relief of a declaratory judgment, citing Eccles v. People's Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784; Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 72 S.Ct. 1074, 96 L.Ed. 1368; Indemnity Ins. Co. of North America v. Kellars, 173 F.2d 120 (1 Cir.); and Lizza & Sons, Inc. v. Hartford Accident, etc., 247 F.2d 262, 265 (1 Cir.)

■■ I rule that defendant's contention, that this is not a proper case for the granting of what is essentially equitable relief under 28 U.S.C.A. § 2201, is well taken. If plaintiff were granted the relief sought and if this Court were to rule that his policy was cancelable only if and when defendant canceled all the other individual policies issued by it to other members of the Massachusetts Medical Society at about the time the policy in suit was issued to plaintiff, no gain would accrue to plaintiff and, on the other hand, considerable unnecessary expense and inconvenience would accrue to all the doctor-members of the Massachusetts Medical Society holding policies similar to that in issue here, and to the defendant. The only result of this expense and inconvenience would be that the defendant, who previously did not cancel all the other policies but merely amended them by agreement with the other insured members, would now be forced to actually cancel all existing policies in order to legally cancel the policy with plaintiff. Once this action had been taken and all policies were canceled, defendant could then legally re-issue policies identical to those now outstanding in the amended form to all members of the Massachusetts Medical Society who are willing* to accept such policies. The net effect of all this activity would be to leave plaintiff where he presently is, uninsured by defendant, and to leave all other doctor-members with a policy identical to the policy they now have. Thus, the end product of a decree upholding plaintiff's contention would be a technical vindication of his claim and a substantial inconvenience to all other doctor-members, as well as the expense to defendant of cancelation and re-issue. In enacting Section 2201, Congress had in mind providing a remedy to supply equitable relief where needed. I do not believe that it intended the Section to be available solely for the meaningless vindication of a claimed right, the establishment of which confers no economic benefit on the claimant and saddles the defendant with unnecessary expense, and likewise saddles innocent third parties with a great deal of totally unnecessary inconvenience.

■ Even if this be a situation in which Congress intended that the relief provided by Section 2201 should be available to one in approximately the same circumstances as the plaintiff herein, on the facts of this particular case a second obstacle stands in the way of the granting of relief sought by plaintiff, and that is that Paragraph 1 of Part VI of plaintiff's policy, put in evidence as Plaintiff's Exhibit 1, contains the following statement: "This Policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance." The only paper attached to Exhibit 1 is a "Hospital Indemnity Rider" not material to the instant controversy. The "Renewal Agreement" attached as Exhibit A to plaintiff's complaint is not an "attached paper" to Exhibit 1, and is, therefore, not a part of the contract. This leaves the only contractual language available with reference to renewal the statement previously referred to on pages 1 and 4 of the policy, "This Policy is renewable at the option of the Company only." The Company has clearly indicated its option not to renew after December 1, 1956, which is within the rights reserved by it under the policy.

Judgment for the defendant.

* Although "Barkis is willin'," plaintiff isn't.